**John D. ARCHER and Elizabeth B. Archer, Plaintiffs,**

v.

**Jack GRYNBERG, Defendant.**

**Civ. No. 88–C–850W.**

United States District Court, D. Utah, C.D.

June 1, 1990.

**450**

E. Craig Smay, Salt Lake City, Utah, for plaintiffs.

Steven Rowe, F. Alan Fletcher, Frederick M. MacDonald, Salt Lake City, Utah, for defendant.

## MEMORANDUM DECISION AND ORDER

WINDER, District Judge.

This matter is before the court on defendant's motion for partial summary judgment. Oral argument was held on May 23, 1990. Plaintiffs were represented by E.

Craig Smay and defendant was represented by Steven P. Rowe. Prior to the argument, the parties had thoroughly briefed the motion, and the court had carefully read all of the materials filed for and against the motion. After taking the matter under advisement, the court has further considered the law and the facts relating to this motion, and, now being fully advised, renders the following memorandum decision and order.

## BACKGROUND

In the Fall of 1981, plaintiffs invested, on a 50/50 basis, with defendant in a gas well or wells to be drilled in Eddy County, New Mexico. Plaintiffs claim that defendant is an experienced petroleum engineer who for many years, in partnership with his wife Celeste, has conducted a business of locating, drilling, completing, maintaining, operating, and selling the products of oil and gas wells on behalf of himself and others. Plaintiffs' Memo Oppos. at 3.

Plaintiffs entered into three agreements with Celeste Grynberg: a Unit Agreement signed on October 16, 1981 but effective as of February 6, 1981; an Operating Agreement signed on October 26, 1981 but effective as of February 6, 1981; and a Farmout Agreement executed on October 23, 1981.[1] The Operating Agreement designates Celeste as Operator. On or about January 26, 1983, defendant was substituted for and assumed all duties and obligations of Celeste as Operator. Plaintiffs, in their complaint, refer to defendant, and not to Celeste, "as operator under the subject agreements." Complaint ¶ 14. In any event, both parties agreed during oral argument that defendant was subject to the Operating Agreement and the Unit Agreement either as the Operator in his own right or as the agent of Celeste.

## DISCUSSION

■ In his motion for partial summary judgment, defendant seeks to establish that

---

1. The Farmout Agreement states that it is entered into by "Celeste C. Grynberg and Jack J. Grynberg, Spouse, ... hereinafter referred to as "Grynberg" or "Operator." The Farmout Agreement is signed by plaintiffs, defendant, and Celeste.

defendant has no liability to plaintiffs except for gross negligence or willful misconduct, the standard of care set forth in Article V.A of the Operating Agreement. Plaintiffs, on the other hand, argue that the applicable standard of care is that set forth in the Unit Agreement, which provides that "after discovery of unitized substances in paying quantities, unit operator shall proceed with diligence to reasonably develop the unitized area as a reasonably prudent operator would develop such area under the same or similar circumstances." *See* Defendant's Memo in Support, Exhibit 2. The issue before the court, therefore, is one of contract interpretation, which may be decided by reference to the three relevant documents between the parties.

After consideration of all three agreements, and more particularly the Operating Agreement and the Unit Agreement, the court is of the opinion that the defendant, as Operator, has no liability to plaintiffs except for gross negligence or willful misconduct. In making this conclusion, the court has taken into consideration the nature of the agreements and the intended purpose of each.

> An Operating Agreement is defined as an agreement between or among interested parties for the testing and development of a tract of land. Typically one of the parties is designated as the operator and the agreement contains detailed provisions concerning the drilling of a test well, the drilling of any additional wells which may be required, the sharing of expenses, and accounting methods. The authority of the operator, and restrictions thereon, are spelled out in detail in the typical agreement.

8 H. WILLIAMS & C. MEYERS, OIL AND GAS LAW, Manual of Terms 659 (1987). The Operating Agreement is an agreement between mineral interest owners which designates an Operator and sets out in some detail the responsibilities assumed by the Operator. Article V.A of the Operating Agreement in this case provides that the Operator

> shall conduct and direct and have full control of *all operations* on the Contract Area as permitted and required by, and within the limits of, this agreement. It shall conduct all such operations in a good and workmanlike manner, *but it shall have no liability as Operator to the other parties for losses sustained or liabilities incurred, except such as may result from gross negligence or willful misconduct.*

Defendant's Memo in Support, Exhibit 1 (emphasis added).

The purpose of a pooling or unitization agreement, on the other hand, is to prevent the physical and economic waste that accompanies the drilling of unnecessary wells and to permit the entire field to be operated as a single entity, without regard to surface boundary lines. 6 H. WILLIAMS AND C. MEYERS, OIL AND GAS LAW § 901 (1989). The Unit Agreement in this case states that "it is the purpose of the parties hereto to conserve natural resources, prevent waste and secure other benefits obtainable through development and operation of the area subject to this agreement under the terms, conditions and limitations herein set forth." Defendant's Memo in Support, Exhibit 2 at 2.

Under the Statutory Unitization Act, N.M.STAT.ANN. §§ 70–7–1 through 70–7–21 (1987) (the "Act"), New Mexico has established a process whereby any working interest owner may apply to the Oil Conservation Division of the Energy, Minerals and Natural Resources Department (the "Division") for unitization. N.M.STAT.ANN. § 70–7–5 (1987). After an application for unitization has been filed with the Division and after notice and hearing, the Division determines whether the application meets the specified conditions required for an order of unitization. N.M.STAT.ANN. § 70–7–6 (1987). The Act requires that the order of unitization shall approve or prescribe a unit agreement which includes certain specified provisions including, *inter alia,* a legal description of the surface area of the unit, a statement of the nature of the operations contemplated, and "a provision designating the unit operator and providing for the supervision and conduct of the unit operations, including the selection,

removal or substitution of an operator from among the working interest owners to conduct the unit operations." N.M. STAT.ANN. § 70–7–7 (1987).

In this case, Section 9 of the Unit Agreement addresses the obligations of the Operator after discovery of unitized substances in paying quantities.

After discovery of unitized substances in paying quantities, unit operator shall proceed with diligence to reasonably develop the unitized area as a reasonably prudent operator would develop such area under the same or similar circumstances.

If the unit operator should fail to comply with the above covenant for reasonable development, this agreement may be terminated by the Commissioner as to all lands of the State of New Mexico within the unit area ...; but in such event, the basis of participation by the working interest owners shall remain the same as if this agreement had not been terminated as to such lands

. . . .

See Defendant's Memo in Support, Exhibit 2.

Section 13 of the Unit Agreement provides that

The terms, conditions and provisions of all leases, subleases, operating agreements and other contracts relating to the exploration, drilling, development or operation for oil or gas of the lands committed to this agreement, shall as of the effective date hereof, be and the same are hereby expressly modified and amended insofar as they apply to lands within the unitized area and to the extent necessary to make the same conform to the provisions hereof.

See Defendant's Memo in Support, Exhibit 2. Plaintiffs argue that as a result of Section 13 of the Unit Agreement, Section 9 of the Unit Agreement is the controlling provision for the standard of care with regard to the Operator. This argument, in essence, effectively negates the provision in the Operating Agreement limiting the Operator's liability to gross negligence or willful misconduct.

The court is of the opinion that there is no conflict between Article V.A and Section 9. The Operating Agreement calls for the Operator to conduct all operations in "a good and workmanlike manner." The Unit Agreement requires the Operator to "proceed with diligence to reasonably develop" the area once unitized substances in paying quantities are discovered. If the Operator fails to reasonably develop the unit once unitized substances in paying quantities are found, the State of New Mexico has the right to terminate all State lands within the unit area. The Operating Agreement requires the Operator to conduct all operations in a good and workmanlike manner. In addition, it provides that the parties agree that the Operator is liable to the other parties (i.e. plaintiffs) for gross negligence or willful misconduct only.

This construction of the relevant documents is such that Article V.A is not rendered superfluous and also comports with the understanding in the oil and gas industry that it may be prudent to limit the liability of an operator to non-operators. Hazlett, *Drafting of Joint Operating Agreements*, 3 ROCKY MTN.MIN.L.INST. 277, 302–03 (1957).

■ Plaintiffs have also argued that defendant has a separate and distinct relationship with plaintiffs, other than as Operator. Plaintiffs argue that by executing the Farmout Agreement, defendant became a partner with plaintiffs in the development of the gas wells. Plaintiffs contend that because of this "partnership," defendant had a fiduciary duty to plaintiffs. Plaintiffs' Memo. Oppos. at 17. This argument lacks merit for two reasons. First, the Farmout Agreement expressly states that the parties do not intend to create a partnership.[2] *See* Defendant's Memo in Support, Exhibit 3, ¶ 19. Second, it is understood in the oil and gas industry that the language of the Operating Agreement setting out the rights and duties of the Opera-

---

**2.** The Unit Agreement also states explicitly that the parties do not intend to create a partnership.

*See* Defendant's Memo in Support, Exhibit 1, Art. VIIA.

tor will normally prevail over any obligations imposed by the general law of fiduciaries. Smith, *Duties and Obligations Owed by an Operator to Nonoperators, Investors, and Other Interest Owners*, 32 ROCKY MTN.MIN.L.INST. 12–1, 12–15 (1986).

Accordingly, based on the foregoing and good cause appearing,

IT IS HEREBY ORDERED that defendant's motion for partial summary judgment is granted. Defendant shall have no liability to plaintiff except for gross negligence or willful misconduct. This order will suffice as the court's ruling on this motion and no further order need be prepared by counsel.