1999 ND 132

**Paula STROM–SELL, Plaintiff and Appellant,**

**v.**

**COUNCIL FOR CONCERNED CITIZENS, Inc.,**
**Defendant,**

**and**

**Toni Austad, Executive Director, William Wilkerson, Board President, Defendants and Appellees.**

**Paula Strom–Sell, Plaintiff and Appellee,**

**v.**

**Council for Concerned Citizens, Inc., Defendant,**

**and**

**Toni Austad, Executive Director, William Wilkerson, Board President, Defendants and Appellants.**

**Nos. 980351, 990011.**

Supreme Court of North Dakota.

July 13, 1999.

Paula Strom–Sell, Fargo, pro se.

Thomas D. Fiebiger, Fargo, for defendants, appellees, and appellants Toni Austad and William Wilkerson.

NEUMANN, Justice.

[¶ 1] Paula Strom–Sell appealed from a summary judgment dismissing her action against Toni Austad and William Wilkerson. Austad and Wilkerson appealed from a post-judgment order denying their motion for attorney fees. We affirm.

I

[¶ 2] Council for Concerned Citizens, Inc. (CCC) was a Montana-based non-profit corporation organized to promote fair housing and prevent discrimination, funded in part through grants from the Department of Housing and Urban Development. Between March 1995 and June 1996, Strom–Sell was employed as the Fair Housing Coordinator for CCC's Fargo office. She was in charge of the Fargo office and supervised an administrative assistant and college interns.

[¶ 3] Austad was CCC's Executive Director and worked in its Great Falls, Montana office. Wilkerson served as a board

member and president of CCC in 1995 and 1996. He was not an employee of CCC, and received no pay for his services.

[¶ 4] In October 1996, Strom–Sell filed a complaint with the Montana Department of Labor and Industry alleging she was due overtime wages for her employment with CCC. CCC considered Strom–Sell an executive or administrative employee exempt from overtime. The United States Department of Labor subsequently advised CCC its Fair Housing Coordinators were not exempt employees. The Department of Labor accepted the results of a self-audit conducted by CCC, which indicated Strom–Sell was entitled to $6,080.12 in overtime wages. It was further determined CCC owed overtime wages to fifteen other employees.

[¶ 5] In early 1997, CCC's board of directors determined the corporation did not have sufficient funds to pay the overtime wage claims and decided to dissolve the corporation. Wilkerson served as trustee during the dissolution. CCC determined it had sufficient funds to pay the overtime claimants 32 percent of their outstanding claims, and it sent Strom–Sell a check for $1,945.64, which was 32 percent of the $6,080.12 it had previously determined Strom–Sell was owed.

[¶ 6] Strom–Sell brought this action against CCC, Austad, and Wilkerson, seeking unpaid overtime wages of $10,752.00, treble damages for intentional and willful violation of the wage and hour laws, and attorney fees. CCC did not respond to the complaint, and a default judgment was entered against it. Austad and Wilkerson answered the complaint, denying Strom–Sell's allegations and asserting they acted within the scope of their employment or duties and were not personally liable. They subsequently moved for summary judgment dismissing all claims against them. The court denied their motion and the case was scheduled for trial.

[¶ 7] The first witness at trial was Strom–Sell. Her testimony focused primarily upon the amount of overtime owed.

Upon completion of her testimony the court expressed concern about the lack of evidence to establish a basis for personal liability of Austad or Wilkerson. The court severed the issue of the amount of overtime, and directed Strom–Sell's counsel to present evidence about the specific acts of Austad and Wilkerson which would give rise to personal liability.

[¶ 8] After a recess, Strom–Sell's counsel called one of CCC's former board members as a witness. The trial court interrupted the direct examination of the witness, again expressing concern that the examination was focused upon irrelevant matters having nothing to do with actions by Austad or Wilkerson which would create personal liability. The court then told Strom–Sell's counsel, "Unless you get specific on the acts and actions that are required to support your allegations, I am going to ask that the Defendants in this matter renew their motions for summary judgment." Counsel explained that he had two witnesses en route from Montana who he planned to call on the second day of trial. The court asked counsel to present an offer of proof as to the substance of their testimony. When counsel stated he was unable to explain what their testimony would be, the court granted Austad and Wilkerson's renewed motion for summary judgment.

[¶ 9] Strom–Sell appealed from the judgment dismissing her action against Austad and Wilkerson. Austad and Wilkerson appealed from the court's post-judgment order denying attorney fees.

## II

[¶ 10] Strom–Sell asserts the court's pre-trial ruling denying Austad and Wilkerson's motion for summary judgment became the "law of the case" and precluded the court from considering the renewed motion. We disagree.

[¶ 11] Summary judgment is governed by N.D.R.Civ.P. 56. We have not previously addressed whether a denial of a mo-

tion for summary judgment becomes the law of the case, precluding subsequent motions. Because N.D.R.Civ.P. 56 is virtually identical to Fed.R.Civ.P. 56, federal court interpretations are highly persuasive and we will be guided by them. *Farmers Union Oil Co. v. Harp,* 462 N.W.2d 152, 154 (N.D.1990).

[¶ 12] Several federal appellate courts have held denial of a motion for summary judgment does not become the law of the case precluding consideration of a subsequent motion, particularly where there is additional evidence before the court. *See, e.g., Curran v. Kwon,* 153 F.3d 481, 487 (7th Cir.1998); *Lovett v. General Motors Corp.,* 975 F.2d 518, 522 (8th Cir. 1992); *Lindsey v. Dayton–Hudson Corp.,* 592 F.2d 1118, 1121 (10th Cir.1979); *see also* 10A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice and Procedure § 2718 (3d ed.1998). We agree with the reasoning of the United States Court of Appeals for the Eighth Circuit in *Lovett,* at 522 (citations omitted):

> The law of the case doctrine provides that a court's decision on legal issues should govern the same issues in later stages of the same case. The doctrine, however, applies only to issues decided by final judgments. The district court's rulings on GM's motion to dismiss and motion for summary judgment were not final judgments. Further, a district court may properly depart from an earlier holding "if convinced that it is clearly erroneous and would work a manifest injustice." *Arizona v. California,* 460 U.S. [605,] 618 n. 8, 103 S.Ct. [1382,] 1391 n. 8 [75 L.Ed.2d 318 (1983)]. When a district court is convinced that it incorrectly decided a legal question in an interlocutory ruling, the district court may correct the decision to avoid later reversal.

[¶ 13] We recognize this case presents an unusual procedural posture. The parties cited no cases or other authorities addressing a trial court's authority to consider a renewed motion for summary judgment during trial. Nothing in the language or spirit of the rule, however, prohibits granting of summary judgment in this case. Rule 56(b), N.D.R.Civ.P., permits a defendant to move for summary judgment "at any time." Furthermore, we have often reiterated the purpose of summary judgment is to allow "the prompt and expeditious disposition of a controversy without trial" if there are no genuine issues of material fact. *Hurt v. Freeland,* 1999 ND 12, ¶ 7, 589 N.W.2d 551. That purpose is equally served if summary judgment is allowed when it becomes evident during trial that there is no evidence on a required element of the plaintiff's claim. *See Pulkrabek v. Sletten,* 557 N.W.2d 225, 226 (N.D.1996) (quoting *Soentgen v. Quain & Ramstad Clinic, P.C.,* 467 N.W.2d 73, 77 (N.D.1991)) ("The plain language of Rule 56 requires the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to establish the existence of a factual dispute as to an essential element of his claim and on which he will bear the burden of proof at trial."). As noted by the court in *Lindsey v. Dayton–Hudson Corp.,* 592 F.2d 1118, 1121 (10th Cir.1979):

> When the second motion was considered there was a significantly expanded record, including the full transcript of the state criminal case. Until final decree the court always retains jurisdiction to modify or rescind a prior interlocutory order. Fed.R.Civ.P. 54(b). Although the court might properly refuse to consider a second motion, we will not require a judge to perpetuate error or take a more roundabout way to arrive at an ultimately necessary judgment by refusing him the right to entertain a second motion for summary judgment after he has ruled once the other way.

Similarly, in this case it would have been an exercise in futility and a waste of judicial resources to require completion of the scheduled two-day trial after it became evident there was no evidence forthcoming

on an essential element of Strom–Sell's claim.

[¶ 14] The trial court explained its reasons for granting the renewed motion during trial. The court noted it originally denied the motion, even though there were no material issues of fact properly raised, because the opposing affidavits contained hearsay evidence and conclusory statements on matters which may have provided a basis for personal liability and the court "suspected that there may be some direct substantive evidence." The court, in effect, gave Strom–Sell the benefit of the doubt and allowed her the opportunity to present direct, admissible evidence on a possible basis for personal liability at trial. When it became obvious Strom–Sell had no such evidence, the court allowed Austad and Wilkerson to renew their motion for summary judgment. Although we do not recommend this procedure as a matter of practice, we conclude there was no reversible procedural error in the trial court's granting of the renewed motion for summary judgment.

### III

[¶ 15] Strom–Sell asserts she adequately raised genuine issues of material fact in the materials presented in opposition to the first motion and in the testimony presented at trial.

[¶ 16] Summary judgment under N.D.R.Civ.P. 56 is a procedural device for promptly and expeditiously disposing of a controversy without a trial if there is no genuine issue of material fact, or if the law is such that resolution of the factual disputes will not alter the result. *Timmerman Leasing, Inc. v. Christianson*, 525 N.W.2d 659, 661–62 (N.D.1994). We have outlined the duty of a party opposing a summary judgment motion:

> Although the party seeking summary judgment has the burden of showing that there is no genuine issue of material fact, the party resisting the motion may not simply rely upon the pleadings. Nor may the opposing party rely upon unsupported, conclusory allegations. The resisting party must present competent admissible evidence by affidavit or other comparable means which raises an issue of material fact and must, if appropriate, draw the court's attention to relevant evidence in the record by setting out the page and line in depositions or other comparable documents containing testimony or evidence raising an issue of material fact.
>
> In summary judgment proceedings, neither the trial court nor the appellate court has any obligation, duty, or responsibility to search the record for evidence opposing the motion for summary judgment. The opposing party must also explain the connection between the factual assertions and the legal theories in the case, and cannot leave to the court the chore of divining what facts are relevant or why facts are relevant, let alone material, to the claim for relief.

*Peterson v. Zerr*, 477 N.W.2d 230, 234 (N.D.1991) (citations omitted). Summary judgment is appropriate against a party who fails to establish the existence of a factual dispute on an essential element of her claim and on which she will bear the burden of proof at trial. *Pulkrabek v. Sletten*, 557 N.W.2d 225, 226 (N.D.1996); *Soentgen v. Quain & Ramstad Clinic, P.C.*, 467 N.W.2d 73, 77 (N.D.1991).

[¶ 17] Strom–Sell's evidence in opposition to the motion failed to meet her burden of demonstrating genuine issues of material fact. The affidavits presented in opposition to the original motion, and her testimony at trial, consist of unsupported, conclusory allegations and hearsay statements. There is no direct, admissible evidence of improper conduct, nor is there a sufficient explanation of how the alleged conduct gives rise to personal liability upon Austad, a corporate employee, or Wilkerson, a corporate board member, officer, and trustee.

[¶ 18] Officers, directors, and agents of a corporation are not generally

liable for the debts of the corporation. *See Dunseith Sand & Gravel Co. v. Albrecht,* 379 N.W.2d 803, 805 (N.D.1986); *Hilzendager v. Skwarok,* 335 N.W.2d 768, 774 (N.D.1983); 3A James Solheim & Kenneth Elkins, Fletcher Cyclopedia of the Law of Private Corporations § 1117 (rev. ed.1994). Such liability may only be imposed if there has been "fraud, other recognized extraordinary circumstances, or specific statutory provision imposing liability." *Danks v. Holland,* 246 N.W.2d 86, 90 (N.D.1976). In addition, Wilkerson is protected by N.D.C.C. § 32–03–44:

> *Immunity of officers, directors, and trustees of nonprofit organizations.* Any person who serves as a director, officer, or trustee of a nonprofit organization ... is immune from civil liability for any act or omission resulting in damage or injury if at the time of the act or omission all of the following are met:
>
> 1. The officer, director, or trustee was acting in good faith and in the scope of that person's official duties as a director, officer, or trustee of the nonprofit organization.
> 2. The act or omission did not constitute willful misconduct or gross negligence on the part of the officer, director, or trustee.
> 3. The officer, director, or trustee did not receive or expect to receive reimbursement for or payment of expenses in excess of two thousand dollars per year for expenses actually incurred as a result of providing services as a director, officer, or trustee of the nonprofit organization and did not receive or expect to receive compensation or anything in lieu of compensation as payment for services provided as a director, officer, or trustee of the nonprofit organization.

[¶ 19] The "evidence" upon which Strom–Sell relies to demonstrate genuine issues of material fact can best be described as unsupported conclusory allegations, inadmissible hearsay, and innuendo.

Strom–Sell has not explained the connection between her allegations and the legal theories in the case. She does not address piercing the corporate veil or otherwise tie the alleged factual disputes to a viable legal theory for personal liability. We conclude the trial court did not err in determining Strom–Sell failed to raise an issue of material fact by competent admissible evidence on an essential element of her claim.

### IV

[¶ 20] Austad and Wilkerson assert the trial court erred in denying their motion for attorney fees. They argue Strom–Sell's action is frivolous, authorizing an award of attorney fees under N.D.C.C. § 28–26–01(2), which provides:

> In civil actions the court shall, upon a finding that a claim for relief was frivolous, award reasonable actual and statutory costs, including reasonable attorney's fees to the prevailing party. Such costs must be awarded regardless of the good faith of the attorney or party making the claim for relief if there is such a complete absence of actual facts or law that a reasonable person could not have thought a court would render judgment in their favor, providing the prevailing party has in responsive pleading alleged the frivolous nature of the claim. This subsection does not require the award of costs or fees against an attorney or party advancing a claim unwarranted under existing law, if it is supported by a good faith argument for an extension, modification, or reversal of the existing law.

[¶ 21] The determination to award attorney fees under N.D.C.C. § 28–26–01(2) lies within the sound discretion of the trial court, and will be reversed on appeal only for an abuse of discretion. *E.g., Rolin Manufacturing, Inc. v. Mosbrucker,* 544 N.W.2d 132, 138 (N.D.1996); *Peterson v. Zerr,* 477 N.W.2d 230, 236 (N.D.1991). The mere fact summary judgment is granted below and affirmed on appeal does not mean the claim was frivo-

lous. *Industrial Commission v. McKenzie County National Bank*, 518 N.W.2d 174, 179 (N.D.1994); *Peterson*, at 236.

[¶ 22] We conclude the trial court did not abuse its discretion when it denied the motion for attorney fees under N.D.C.C. § 28–26–01(2).

## V

[¶ 23] The summary judgment dismissing Strom–Sell's claims and the order denying attorney fees are affirmed.

[¶ 24] VANDE WALLE, C.J., and SANDSTROM, MARING and KAPSNER, JJ., concur.