1999 ND 167

**Jack J. GRYNBERG and Jack Grynberg and Associates, Plaintiffs and Appellants**

v.

**DOME PETROLEUM CORP., UV Industries, Inc., Amoco Canada Petroleum Company, Ltd., and Amoco Canada Resources, Inc., Defendants and Appellees**

**Texaco Producing, Inc., Defendant**

No. 980278.

Supreme Court of North Dakota.

Aug. 25, 1999.

Rehearing Denied Sept. 8, 1999.

Dennis E. Johnson, Johnson & Sundeen, Watford City, for plaintiffs and appellants.

John Patrick Brendel (argued) and Burke J. Ellingson (appearance), Brendel & Zinn, St. Paul, for defendants and appellees.

NEUMANN, Justice.

[¶ 1] Jack J. Grynberg and Jack Grynberg and Associates ("Grynberg") appealed from a summary judgment dismissing an action for damages against Dome Petroleum Corporation and UV Industries, Inc., for alleged overcharging in drilling oil and gas wells. We hold the trial court properly granted Dome summary judgment because the parties' contract unambiguously said Dome's cost statements for the wells were conclusively presumed correct unless Grynberg made a written exception and claim for adjustment within

twenty-four months after the end of the calendar year in which the statements were rendered. We affirm.

## I

[¶ 2] In January 1979, Grynberg, Dome, and UV executed a written "farmout agreement" for the operation and development of oil and gas leases in McKenzie County. The farmout agreement said the parties' relationship was not a partnership and designated Dome to act as operator of the venture in accordance with an attached "operating agreement," which was also executed by all three parties. Under the farmout agreement, Grynberg assigned his interest in designated oil and gas leases to Dome and UV in exchange for their promise to drill wells on the leased lands. Grynberg retained a 2.5 percent overriding royalty interest in all oil and gas production until "payout," when he could convert his overriding royalty interest to a 50 percent working interest. The farmout agreement defined "payout" to mean when the proceeds from production of earning wells equaled the costs incurred for drilling and operating the wells.

[¶ 3] The farmout agreement required Dome to furnish Grynberg with an itemized statement of costs and earnings for the wells and specified "[a]ll costs incident to 'payout' shall be determined in accordance with the provisions of [the Council of Petroleum Accountants Societies of North America ("COPAS")] Accounting Procedure" attached as an exhibit to the operating agreement. Under the COPAS accounting procedure, a non-operator had the right to audit Dome's accounts and records within a twenty-four month period following the end of the calendar year and all statements rendered by Dome were conclusively presumed correct twenty-four months after the end of the calendar year unless a non-operator made a written ex-

ception and claim for adjustment within that time.

[¶ 4] Dome drilled and operated eleven earning wells and paid Grynberg a 2.5 percent overriding royalty interest for production from those wells. The wells produced oil and gas through November 1983 when Dome sold its interest in the wells to Texaco Producing, Inc., and the wells were plugged. It is undisputed Dome never declared that payout had occurred, and Grynberg failed to make a written exception to Dome's expenditures within twenty-four months.

[¶ 5] In 1988 Grynberg sued Dome, UV, and Texaco,[1] for unjust enrichment, fraud, negligence, breach of fiduciary duty, and breach of contract, alleging payout had occurred, or reasonably should have occurred, no later than April 1, 1982, and Dome failed to notify Grynberg and failed to provide him with cost statements for the wells. Grynberg alleged Dome's drilling and operating costs for the wells were unreasonable and disproportionate to costs normally and customarily incurred for completing and operating wells in the area. Grynberg sought an accounting of revenues allocable to a 50 percent working interest in the wells. Grynberg subsequently sought to file a third and a fourth amended complaint.

[¶ 6] The trial court dismissed Grynberg's action in separate orders which were incorporated into a final judgment. In a November 1995 order, the court granted Grynberg's motion to voluntarily dismiss his fraud claim. In a July 1996 order, the court denied Grynberg's request to file third and fourth amended complaints; concluded Grynberg was not entitled to consequential damages or prejudgment interest; and granted Dome summary judgment on Grynberg's claims

1. Grynberg subsequently settled with Texaco. Amoco Canada Petroleum Company Ltd. acquired Dome as a wholly owned subsidiary and the previous parent of Dome was amalgamated with another company to form Amo-

co Canada Resources Ltd. Grynberg thereafter amended his complaint to name Canada Petroleum and Canada Resources as defendants.

for inadequate recordkeeping and breach of a fiduciary duty. The court decided the operating agreement and the COPAS accounting procedure required Dome to furnish Grynberg with cost statements and to retain those records for twenty-four months. The court decided, however, the operating agreement did not control Grynberg's conduct, and he did not have a contractual right to audit Dome's records. The court nevertheless concluded Grynberg had an analogous right under the farmout agreement to verify Dome's expenditures, and he did not request access to Dome's books within a reasonable time, thus waiving his right to complain about Dome's costs for the wells. The court also granted Dome summary judgment on Grynberg's claim for breach of a fiduciary duty, concluding the operating agreement required Dome to conduct its operation in a good and workmanlike manner and limited its liability to losses resulting from its gross negligence or willful misconduct.

[¶ 7] In a July 1998 order, the court granted Dome summary judgment on Grynberg's remaining claims, essentially repeating its July 1996 order about Dome's record keeping obligations and concluding Grynberg waived his right to complain about Dome's costs because he did not request access to its records within a reasonable time and the operating agreement required Dome to retain its records for only twenty-four months. Grynberg appealed from the final judgment incorporating the separate orders.

2. The COPAS accounting procedure provides:
   4. Adjustments
   Payment of any such bills shall not prejudice the right of any Non–Operator to protest or question the correctness thereof; provided, however, all bills and statements rendered to Non–Operators by Operator during any calendar year shall conclusively be presumed to be true and correct after twenty-four (24) months following the end of any such calendar year, unless within the said twenty-four (24) month period a Non–Operator takes written exception thereto and makes claim on Operator for adjustment. No adjustment favorable to Opera-

## II

[¶ 8] Grynberg argues the trial court erred in deciding Dome's obligation to maintain records for twenty-four months precluded him from challenging Dome's cost statements after that time. He argues the twenty-four month limitation does not apply to him, because, before payout, he was not bound by the operating agreement and the COPAS accounting procedure. He argues even if the twenty-four month limitation applies to him, he is not precluded from challenging Dome's costs because there is no evidence Dome sent or he received cost statements required to trigger the limitation.

[¶ 9] Resolution of this issue turns on whether Grynberg was subject to the operating agreement and the COPAS accounting procedure,[2] which requires the interpretation of the parties' written agreement. This issue is raised in the posture of summary judgment, which is a procedural device for the prompt and expeditious disposition of a controversy without a trial if either party is entitled to judgment as a matter of law, if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving disputed facts would not alter the result. *Strom–Sell v. Council for Concerned Citizens, Inc.*, 597 N.W.2d 414, 1999 ND 132, ¶ 16.

▬▬▬ [¶ 10] The construction of a written contract to determine its legal effect is a question of law. *Lire, Inc. v. Bob's*

tor shall be made unless it is made within the same prescribed period. . . .
   5. Audits
   A. Non–Operator, upon notice in writing to Operator and all other Non–Operators, shall have the right to audit Operator's accounts and records relating to the Joint Account for any calendar year within the twenty-four (24) month period following the end of such calendar year; provided, however, the making of an audit shall not extend the time for the taking of written exception to and the adjustments of accounts as provided for in Paragraph 4.

*Pizza Inn Restaurants, Inc.*, 541 N.W.2d 432, 433 (N.D.1995). Contracts are construed to give effect to the mutual intention of the parties at the time of contracting. N.D.C.C. § 9–07–03; *Lire,* at 433–34. The parties' intention must be ascertained from the writing alone, if possible. N.D.C.C. § 9–07–04; *Lire,* at 434. A contract must be construed as a whole to give effect to each provision if reasonably practicable. N.D.C.C. § 9–07–06; *Lire,* at 434. Under N.D.C.C. § 9–07–07, several contracts relating to the same matter between the same parties and made as part of substantially one transaction must be construed together. Words in a contract are construed in their ordinary and popular sense, unless used by the parties in a technical sense or given a special meaning by the parties. N.D.C.C. § 9–07–09. If the parties' intention in a written contract can be ascertained from the writing alone, the interpretation of the contract is a question of law for the court to decide. *Ohio Farmers Ins. Co. v. Dakota Agency, Inc.,* 551 N.W.2d 564, 565 (N.D.1996).

[¶ 11] Here, the farmout agreement included an attached operating agreement, which, in turn, included the attached CO-PAS accounting procedure. The farmout agreement said "Dome will act as Operator of the subject venture in accordance with the attached Operating Agreement." The farmout agreement also provided:

> 20. *Operating Agreement.* All operations by Dome as Operator, UV and Grynberg shall be subject to the Operating Agreement, attached hereto as Exhibit "A" and made a part hereof, when not subject to payout, as defined above in Article 5; whether on those portions of said lease and lands in which Dome and UV earn a fifty percent (50%) interest by drilling an oil well or a dry hole, or when payout has occurred and Grynberg has converted his overriding royalty interest to a working interest and Dome and UV have not commenced operations for subsequent earning wells as set out in Article 5.

[¶ 12] The trial court decided the operating agreement did not apply to Grynberg until after payout and therefore did not control Grynberg's rights and duties. The court concluded Grynberg did not have a contractual right to audit Dome's books under the operating agreement and attached COPAS accounting procedure, but he had an analogous right to verify Dome's expenditures under the farmout agreement.[3] The court decided Grynberg had the right to access Dome's books at all reasonable times and he waived his right to complain about Dome's expenditures.

---

3. The trial court's decision cited the following provisions of the farmout agreement:

13. *Reports, Information, Logs, Tests and Failure to Perform.* When a location has been staked off for the drilling of the test well, and any subsequent well, Dome as Operator agrees to furnish UV and Grynberg a report giving the number of feet from an established corner where such well is to be drilled and thereafter, until such well is completed, to mail to UV and Grynberg a daily report giving the progress of such well.

Dome as Operator agrees to furnish to UV and Grynberg copies of all logs run in each well, including a gamma ray log to be run from the surface to the total depth drilled, and to furnish any other information pertaining to such wells as reasonably required by UV and Grynberg.

14. *Right of Access and Information.* Dome as Operator agrees that representatives of UV and Grynberg shall have access to the premises and to the derrick floor of any well drilled by it under the provisions of this Agreement, at their sole risk and expense, for the purpose of observing the progress of drilling operations and obtaining information concerning such well, and that such representative shall, upon request, be furnished with full information pertaining to drilling operations covering all formations encountered, including samples of cuttings or cores and copies of logs run by the Operator. Operator further agrees that UV and Grynberg shall, upon request, be entitled to full information in regard to all production operations conducted on the premises covered by this Agreement, and it shall have access at all reasonable times to the books and accounts of Dome as Operator pertaining thereto.

The court concluded the operating agreement and the COPAS accounting procedure required Dome to maintain records for twenty-four months, and the court granted Dome summary judgment because Grynberg waived his right to complain about Dome's expenditures and failed to make a written exception to Dome's cost statements within twenty-four months.

[¶ 13] Waiver is a factual question, *Peterson v. Front Page, Inc.*, 462 N.W.2d 157, 159 (N.D.1990), and disputed factual issues are inappropriate for summary judgment. *See Strom–Sell*, 597 N.W.2d 414, 1999 ND 132, ¶ 16. To the extent the trial court's decision relied on its finding Grynberg waived his right to complain about Dome's expenditures, we conclude the court erred in resolving that issue in the context of summary judgment.

[¶ 14] We also conclude, however, the court's decision Grynberg was not subject to the operating agreement before payout is contrary to the plain language of the farmout agreement. The farmout agreement specified "[a]ll operations by Dome as Operator, UV and Grynberg shall be subject to the Operating Agreement ... when not subject to payout." The ordinary meaning of that language evidences an intent that when the venture was not subject to payout, all operations by Dome as operator and Grynberg were subject to the operating agreement. It is undisputed that "payout" was never declared in this case. In the plain language of the farmout agreement, because payout had not been declared, the operation was not subject to payout and Grynberg's rights and obligations were subject to the operating agreement and the attached COPAS accounting procedure.

[¶ 15] Additionally, the farmout agreement specified "[a]ll costs incident to 'payout' shall be determined in accordance with the provisions of [the COPAS] Accounting Procedure." Contrary to Grynberg's argument, the plain meaning of that phrase is not limited to the accounting methodology for calculating the dollar amount of costs of the operation. Rather, the plain language of that phrase evidences the parties' intent to incorporate the COPAS accounting procedure to determine all costs incident to payout. The COPAS accounting procedure includes Dome's twenty-four month record keeping requirement and the non-operator's corresponding obligation to make a written exception to Dome's expenses within that time.

[¶ 16] We conclude the plain language of the farmout agreement subjected Grynberg to the operating agreement and the attached COPAS accounting procedure when the venture was not subject to payout, and the farmout agreement specifically incorporated the COPAS accounting procedure for determining all costs incident to payout. Under the COPAS accounting procedure, Dome's cost statements were conclusively presumed correct twenty-four months after the end of the calendar year unless Grynberg made a written exception and claim for adjustment within that time.

[¶ 17] Grynberg argues the twenty-four month period is triggered only after he received Dome's cost statements and he claims he did not receive those statements. Assuming Grynberg did not receive cost statements from Dome, the plain language of the COPAS accounting procedure permitted a non-operator to request an audit within twenty-four months following the end of a calendar year and said all bills and statements rendered during any calendar year were conclusively presumed true and correct after twenty-four months following the end of the calendar year. The parties' agreement imposed a condition precedent on Grynberg to make a written exception or take some action within the twenty-four month period to raise issues pertaining to Dome's costs. *See Willard Pease Oil & Gas Co. v. Pioneer Oil & Gas Co.*, 899 P.2d 766, 774–75 (Utah 1995) (stating COPAS accounting procedure allowed operator to dispose of records after end of audit period); *Woods Petroleum*

*Corp. v. Hummel,* 784 P.2d 242, 244 (Wyo. 1989) (holding COPAS accounting procedure unambiguously required non-operator to raise cost objection within twenty-four month time period). The parties' agreement did not require Grynberg to receive Dome's statements to trigger the twenty-four month period.

[¶ 18] Although the trial court erred in deciding a waiver issue in the context of summary judgment and in deciding Grynberg was not subject to the operating agreement, we will not reverse a proper judgment merely because the court's reasoning in arriving at the judgment was incorrect, if the result is the same under the correct law and reasoning. *E.g., Almont Lumber & Equip. Co. v. Dirk,* 1998 ND 187, ¶ 10, 585 N.W.2d 798. We conclude the parties' contract, when read as a whole, unambiguously required Grynberg to make a written exception to Dome's cost statements within twenty-four months after the end of the calendar year in which the statements were rendered. It is undisputed Grynberg did not make a written exception to Dome's costs within that time. Dome's expenditures for the wells therefore were conclusively presumed true and correct, and the trial court properly granted Dome summary judgment on this issue.[4]

### III

[¶ 19] Grynberg argues Dome owed him a fiduciary duty to maintain and retain records used to determine when payout occurred. Grynberg argues he did not release Dome from liability for future breaches of fiduciary duties, and the court erred in construing the operating agreement and the farmout agreement to limit Dome's liability to acts that constituted gross negligence or willful misconduct. Grynberg does not contend an operator

always owes a fiduciary duty to other parties; rather, he argues Dome wrongfully withheld proceeds from a 50 percent working interest which should have been offered to him and Dome thus owed him a fiduciary duty to hold those proceeds in trust.

[¶ 20] Some courts have recognized an operator has a fiduciary obligation to others in limited circumstances. *See In re Mahan & Rowsey, Inc.,* 817 F.2d 682, 684 (10th Cir.1987); *Reserve Oil, Inc. v. Dixon,* 711 F.2d 951, 953 (10th Cir.1983). *Cf. Burlington Northern & Sante Fe Ry. Co. v. Burlington Resources Oil & Gas Co.,* 1999 ND 39, ¶¶ 14–16, 590 N.W.2d 433 (applying fiduciary obligations to contractually created agency relationship). Other courts have rejected the imposition of a fiduciary duty where an operating agreement defines the scope of the parties' duties. *See Dime Box Petroleum Corp. v. Louisiana Land & Exploration Co.,* 938 F.2d 1144, 1147–48 (10th Cir.1991); *Caddo Oil Co., Inc. v. O'Brien,* 908 F.2d 13, 17 (5th Cir.1990); *Archer v. Grynberg,* 738 F.Supp. 449, 452–53 (D.Utah 1990) *aff'd* 951 F.2d 1258, 1991 WL 268808 (10th Cir. 1991); *Tenneco Oil Co. v. Bogert,* 630 F.Supp. 961, 966–69 (W.D.Okl.1986).

[¶ 21] The existence and scope of a fiduciary duty depends upon the language of the parties' agreement. *See* 32 Rocky Mt. Min. L. Inst. § 12.02[3] (1986); 2 H. Williams & C. Meyers, *Oil and Gas Law* § 437.1 (1998). In *Bogert,* 630 F.Supp. at 967 (citations omitted), the court aptly explained:

> Even though the present joint operating agreement may be seen to create a joint venture with attendant fiduciary duties, the court is mindful that the term "fiduciary" is easily bandied-about without precision. "The scope of the transactions affected by the relation and the

4. Under this interpretation of the parties' agreement, issues about Grynberg's right to access Dome's books at all reasonable times and Grynberg's waiver of the right to complain about Dome's expenditures are not rele-

vant to Grynberg's contractual right to audit Dome's books and obligation to make a written exception to Dome's costs within twenty-four months.

extent of the duties imposed are not identical in all fiduciary relations." In the case of joint ventures to develop oil and gas properties, the law is well established that the determination of the existence and extent of such duties is controlled by the terms of the agreement between the parties.

[¶ 22] The parties' farmout agreement and operating agreement, when construed together, specifically said the venture was not a partnership and Dome had no liability for losses sustained or liabilities incurred except for gross negligence or willful misconduct. Grynberg's fiduciary argument is premised on Dome's alleged failure to maintain and retain records for determining payout and on his claim payout had occurred and Dome wrongfully withheld the proceeds of his 50 percent working interest from him. The parties' contractual agreement said all cost statements rendered by Dome were conclusively presumed correct unless Grynberg made a written exception to the statements within twenty-four months. Under these circumstances, we conclude the parties' contractual agreement is dispositive of Grynberg's claim for breach of a fiduciary duty.

## IV

[¶ 23] Because the plain language of the parties' agreement required Grynberg to make a written exception to Dome's cost statements within twenty-four months and it is undisputed he did not comply with that requirement, we conclude the trial court properly granted summary judgment dismissing his action. We therefore need not address Grynberg's issues about punitive and consequential damages, or the trial court's reliance on the statute of limitations in denying his motion to amend his complaint to add additional plaintiffs.

## V

[¶ 24] The judgment is affirmed.

[¶ 25] VANDE WALLE, C.J., and MARING, KAPSNER, SANDSTROM, JJ., concur.

