# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

———————

No. 10-3116

———————

| | | |
|---|---|---|
| Jerome C. Anderson; Patricia M. Barstad; Joan M. Barstad; Jane C. Craft; Peggy M. Cowan; Jerome Anderson, as Trustee of the Anderson Family Mineral Trust; John C. Anderson; Ray Anderson; Oscar R. Anderson; Beatrice Anderson; Donald Tarczanin; Susan Tarczanin; Cora Anderson, | * * * * * * * * * * | |
| | * | Appeal from the United States |
| | * | District Court for the |
| | * | District of North Dakota. |
| Plaintiffs-Appellants, | * | |
| | * | |
| v. | * | |
| | * | |
| Hess Corporation, | * | |
| | * | |
| Defendant-Appellee. | * | |

———————

Submitted: June 15, 2011
Filed: August 15, 2011

———————

Before COLLOTON, CLEVENGER,[1] and BENTON, Circuit Judges.

———————

CLEVENGER, Circuit Judge.

———————

[1]The Honorable Raymond C. Clevenger, III, Circuit Judge of the United States Court of Appeals for the Federal Circuit, sitting by designation.

Jerome C. Anderson, Patricia M. Barstad, Joan M. Barstad, Jane C. Craft, Peggy M. Cowan, Jerome Anderson, as Trustee of the Anderson Family Mineral Trust, John C. Anderson, Ray Anderson, Oscar R. Anderson, Beatrice Anderson, Donald Tarczanin, Susan Tarczanin, and Cora Anderson (collectively, "Andersons") appeal the grant of summary judgment by the district court[2] in favor of Hess Corporation ("Hess"), the successor in interest to and lessee of mineral rights on the Andersons' land in Mountrial County, North Dakota. The Andersons contend that the district court erred in construing the five leases at issue as requiring Hess to engage in "drilling operations" rather than actual "drilling" in order to extend the primary terms of the leases and granting Hess's motion for summary judgment. We affirm.

I

The facts are undisputed. The Andersons signed four mineral leases on May 3, 2004, and one mineral lease on May 10, 2004, providing Diamond Resources, Inc. with mineral rights on 468.8 acres of the Andersons' land in Mountrial County, North Dakota. After a number of transfers and assignments, Hess became the lessee of the property on December 30, 2004.

---

[2]The Honorable Daniel L. Hovland, United States District Judge for the District of North Dakota.

-2-

All five leases are identical and incorporate Pugh and habendum clauses,[3] which contain the language that the parties dispute (underlined here) and respectively state the following:

> Notwithstanding the provisions of this lease to the contrary, this lease shall terminate at the end of the primary term as to all of the leased lands except those within a producing or spacing unit prescribed by law or administrative authority on which is located a well producing or capable of producing oil and/or gas or on which lessee is engaged in drilling or reworking operations. However, this lease shall not terminate as to any of the leased lands so long as drilling or reworking operations are being continuously prosecuted, that is, if not more than one (1) year shall elapse between the completion or abandonment of one well and the beginning of operations for the drilling of another well.

> 1. It is agreed that this lease shall remain in force for a term of Five (5) years from this date and as long thereafter as oil or gas of whatsoever nature or kind is produced from said leased premises or on acreage pooled therewith, or drilling operations are continued as hereinafter provided. If, at the expiration of the primary term of this lease, oil or gas is not being produced on the leased premises or on acreage pooled therewith but Lessee is then engaged in drilling or re-working

---

[3]"A Pugh clause is 'a type of pooling clause which provides that drilling operations on or production from a pooled unit or units shall maintain the lease in force only as to lands included within such unit or units.'" Egeland v. Cont'l Res., Inc., 616 N.W. 2d 861, 863 n.4 (N.D. 2000) (quoting 8 Patrick H. Martin & Bruce M. Kramer, Williams & Meyers, Manual of Oil and Gas Terms 873 (1999)). "A habendum clause sets forth 'the duration of the grantee's or lessee's interest in the premises.'" Id. at 862 n.1 (quoting 8 Martin & Kramer, Manual of Oil and Gas Terms 479). The leases in the present case set forth five-year primary terms, which expired on May 3, 2009 and May 10, 2009, respectively, unless extended by virtue of Hess's activities.

operations thereon, then this lease shall continue in force so long as operations are being continuously prosecuted on the leased premises or on acreage pooled therewith; and operations shall be considered to be continuously prosecuted if not more than ninety (90) days shall elapse between the completion or abandonment of one well and the beginning of operations for the drilling of a subsequent well. If after discovery of oil or gas on said land or on acreage pooled therewith, the production thereof shall cease from any cause after the primary term, this lease shall not terminate if Lessee commences additional drilling or re-working operations within ninety (90) days from date of cessation of production or from date of completion of dry hole. If oil or gas shall be discovered and produced as a result of such operations at or after the expiration of the primary term of this lease, this lease shall continue in force so long as oil or gas is produced from the leased premises or on acreage pooled therewith.

Joint App'x at 7.

In 2008 and 2009, Hess engaged in activities to prepare for drilling a well on some of the leased land. On October 27, 2008 Hess surveyed and staked a well. On December 28, 2008, Hess submitted an application for a drilling permit to the Oil and Gas Division of the North Dakota Industrial Commission, which was approved on January 2, 2009. On January 23, 2009, Hess moved equipment to the well location and began to prepare the surface. From January 26, 2009 through February 4, 2009, Hess continued to prepare the surface of the well, and on February 6, 2009, Hess leveled and lazered the pad. Encumbered by heavy snow, Hess finished digging the drilling pit on February 13, 2009. It then spread scoria, graveled, and lined the pit. On April 28, 2009, Hess drilled the hole for the main conductor pipe. Hess moved the tanks used to store drilling fluid to the location on April 30, 2009, and drilled the mouse hole[4] for the rig on May 1, 2009. According to Hess's records, the well was

---

[4]The mouse hole is "[a] shallow hole drilled adjacent to the well hole for the placement of certain tools or parts of the drilling rig equipment during its operation."

complete and ready for a rig on May 1, 2009. Problems at another well, however, delayed the arrival of the rig. Hess spud (i.e., completed the first boring of the hole) the well on May 11, 2009. The well was completed on June 30, 2009, and has produced continuously since that date.

On May 7, 2009, Hess contacted the Andersons to negotiate an extension or renewal of the leases. Specifically, Hess offered to increase the Andersons' royalty to 14% in exchange for an extension. The Andersons rejected Hess's offer, but communicated a counteroffer to Hess, agreeing to renew each lease for a one-year term, with a signing bonus of $500 per mineral rights acre, and an 18.75% royalty. Hess did not accept the counteroffer, and the Andersons filed suit to quiet title in state court on September 22, 2009. Hess removed the action to federal court on October 9, 2009.

II

After the close of discovery, both parties filed motions for summary judgment. The Andersons contended that the leases expired on May 3, 2009 and May 10, 2009, because the leases required Hess to be engaged in drilling on the property – not merely drilling operations – in order to extend their primary terms, and Hess was not engaged in drilling at the time. Hess contended that the leases did not expire because it was engaged in drilling operations on the property prior to the expiration of the leases' primary terms. The Andersons also requested that the district court certify a question to the North Dakota Supreme Court, namely:

---

Anderson v. Hess Corp., 733 F. Supp. 2d 1100, 1103 n.3 (D.N.D. 2010) (citation omitted).

Under mineral leases that provide for termination of the leases at the end of the primary term as to all of the leased lands except those lands on which lessee is "engaged in drilling", does the phrase "engaged in drilling" require a lessee to have a drilling bit attached to a drilling rig penetrate the ground before the end of the primary term in order to extend the leases?

Anderson v. Hess Corp., 733 F. Supp. 2d 1100, 1104 (D.N.D. 2010).

The district court declined to certify the Andersons' question to the state supreme court because it determined that the question posed was not determinative of the proceeding. Id. The court also concluded that it need not engage in speculation or conjecture regarding state law in order to decide the parties' motions for summary judgment. Id.

With respect to the quiet title claim, the court first construed the lease terms "drilling" and "drilling operations," pointing out the differences between the two terms. Specifically, the court noted that "drilling" requires the drill to actually penetrate the ground and bore a hole, while "drilling operations" require work preparatory to drilling, the capability to drill, and good faith intent to drill and complete the well. Id. at 1106. Having noted the differences between the two terms, the district court next determined that the North Dakota Supreme Court has indicated that the proper meaning of the phrase "drilling or reworking operations" includes "drilling operations" and "reworking operations" rather than "drilling" and "reworking operations." Id. at 1106-07. The court further found that the plain language of each lease, and more particularly the habendum clause, supported an interpretation of the disputed language that includes "drilling operations" and "reworking operations." Id. at 1107. The district court explained that the use of "operations" indicates that "drilling" and "reworking" are adjectives that modify the

noun "operations." Id. Thus the district court found the Andersons' contention that Hess had to be "engaged in drilling" to extend the leases "without merit." Id.

After construing the lease terms, the district court determined that Hess was engaged in drilling operations at the end of the primary lease terms by virtue of its preparatory work. Id. at 1107-08. As a result, the district court granted Hess's motion for summary judgment and denied the Andersons' motion for summary judgment.

## III

The Andersons contend that the district court erred in declining to submit their proffered question to the North Dakota Supreme Court, and that the district court's interpretation of the disputed lease language was speculative and conjectural. As a result, they ask this court to reverse the district court's interpretation of the disputed language and certify the following question to the North Dakota Supreme Court:

> Under a mineral lease that provides for termination of the lease at the end of the primary term unless the lessee is then "engaged in drilling or reworking operations," does the phrase "engaged in drilling or reworking operations" require a lessee to spud the well before the end of the primary term, in order to extend the lease?

We review a district court's decision regarding whether to certify a question of law to the appropriate state court under the abuse of discretion standard. Allstate Ins. Co. v. Steele, 74 F.3d 878, 881-82 (8th Cir. 1996) (citing Lehman Bros. v. Schein, 416 U.S. 386, 391 (1974)). We have expressly held that absent a close question of state law or a lack of state guidance, a federal court should determine all the issues before it. Perkins v. Clark Equip. Co., 823 F.2d 207, 209 (8th Cir. 1987).

Here, the district court concluded that the question presented by the Andersons was not determinative of the issue presented. The district court further concluded that it could make a non-conjectural determination regarding the meaning of the disputed lease language.

We conclude that the district court did not abuse its discretion in declining to certify the Andersons' question. We note that the Andersons' question for certification presented to the district court, which hinged on the meaning of the term "engaged in drilling," is different from the question for certification they present to this court on appeal. With respect to the former question presented, the district court correctly concluded that the term "engaged in drilling" was not determinative of the case, and that the proper issue was whether the term "engaged in drilling or reworking operations" included "drilling operations" and "reworking operations," or "drilling" and "reworking operations."

With respect to the question presented in this appeal, i.e., the meaning of the phrase "engaged in drilling or reworking operations," we decline to certify the Andersons' question because we do not believe that the issue is close. We further conclude that the North Dakota Supreme Court has provided enough guidance regarding the meaning of the disputed lease language to render our decision non-conjectural.

In Serhienko v. Kiker, 392 N.W.2d 808 (N.D. 1986), the North Dakota Supreme Court suggested that it would interpret the phrase "drilling or reworking operations" to mean both drilling operations and reworking operations. When determining whether the defendant was engaged in reworking operations, the Serhienko court cited Sheffield v. Exxon Corp., 424 So. 2d 1297, 1303 (Ala. 1982), for the proposition that "principles for determining what constitutes 'drilling operations' are applicable for determining what constitutes 'reworking operations' in lease provisions." 392 N.W.2d at 812. The lease in Sheffield contained the same

"drilling or reworking operations" language that is at issue in the present case: "[i]f at the expiration of the primary term, oil, gas or other mineral is not being produced on said land, or on acreage pooled therewith, but Lessee is then engaged in drilling or reworking operations thereon . . . ." 424 So. 2d at 1300. In determining whether the lessee had undertaken drilling or reworking operations, the Alabama Supreme Court stated the general rule of construction for habendum clauses: "Many oil, gas, and mineral leases now contain cessation of production clauses. These clauses generally provide for termination of the lease in the event that certain time periods expire without the operator or lessees having prosecuted 'drilling' or 'reworking' operations." Id. at 1302. The Sheffield court then set forth guidelines as to "what types of operations constitute drilling or reworking. . . ." Id.

The North Dakota Supreme Court's favorable citation to Sheffield suggests that the state court would interpret the phrase "drilling or reworking operations" to mean "drilling operations" and "reworking operations." Therefore, certification to the North Dakota Supreme Court is not warranted. We now address the proper interpretation of the disputed lease language.

IV

The Andersons assert that the district court erred in granting Hess's motion for summary judgment. We review the district court's grant of summary judgment de novo. Cole v. Homier Distrib. Co., Inc., 599 F.3d 856, 864 (8th Cir. 2010). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The Andersons argue that the district court's error in granting summary judgment in favor of Hess lies in its improper interpretation of the phrase "engaged in drilling or reworking operations" in the leases. More particularly, the Andersons

-9-

argue: (a) the Pugh clause and habendum clause language is ambiguous; (b) it was the district court's duty to construe the ambiguous claim language against Hess, the lessee and drafter of the lease; (c) when construing the claim language against Hess, it is clear that the word "or" in "engaged in drilling or reworking operations" modifies only reworking and not drilling, thus making the disputed term "engaged in drilling"; (d) "engaged in drilling" has a plain meaning, to wit, "the act of boring a hole through which oil and gas may be produced if encountered in commercial quantities"; and (e) Hess was clearly not "engaged in drilling" at the time the primary term of the leases expired because it had not yet spud the well.

Contract interpretation, including whether a contract as written is ambiguous, is a matter of law, which we review de novo. See Med. Protective Co. v. Bubenik, 594 F.3d 1047, 1051 (8th Cir. 2010). The North Dakota Supreme Court interprets gas and oil leases utilizing the same general principles that govern interpretation of contractual agreements:

> The construction of a written contract to determine its legal effect is a question of law for the court to decide, and on appeal, this Court will independently examine and construe the contract to determine if the trial court erred in its interpretation of it. West v. Alpar Res., Inc., 298 N.W.2d 484, 490 (N.D. 1980). Words in a contract are construed in their ordinary and popular sense, unless used by the parties in a technical sense or given a special meaning by the parties. Grynberg v. Dome Petroleum Corp., 1999 ND 167, ¶ 10, 599 N.W.2d 261. We also construe contracts in light of existing statutes, which become part of and are read into the contract as if those provisions were included in it. Reed v. Univ. of North Dakota, 1999 ND 25, ¶ 22 n. 4, 589 N.W.2d 880. A contract must be read and considered in its entirety so that all of its provisions are taken into consideration to determine the true intent of the parties. Miller v. Schwartz, 354 N.W.2d 685, 688 (N.D. 1984).

Egeland, 616 N.W.2d at 864. This approach tracks the North Dakota statutes governing contract interpretation, which provide: (1) the language of a contract governs its interpretation if the language is clear and unambiguous, see N.D. Cent. Code Ann. § 9-07-02; (2) courts are to interpret the contract as a whole to give effect to all of its provisions, see N.D. Cent. Code Ann. § 9-07-06; and (3) the words of a contract are to be given their ordinary meaning, absent the parties' use of the words in a technical sense, see N.D. Cent. Code Ann. § 9-07-09.

Turning to the disputed lease language, we conclude that the term "engaged in drilling or reworking operations" is not ambiguous and means "engaged in drilling operations or reworking operations." Both the context and plain language of the habendum clause compel this conclusion. First, the habendum clause's use of the word "operations" after the words "drilling or reworking" denotes that the words "drilling" and "reworking" are adjectives that modify the noun "operations." Further, the habendum clause states: "[i]f at the expiration of the primary term of this lease, oil or gas is not being produced on the leased premises . . . but the Lessee is then engaged in drilling or re-working operations thereon, then this lease shall continue in force so long as operations are being continuously prosecuted on the leased premises. . . ." Joint App'x at 7 (emphases added). This excerpt equates the unmodified noun "operations" with the modifying adjectives "drilling or reworking" described earlier in the sentence. The excerpt clearly demonstrates that "operations" must include "drilling operations or reworking operations." Otherwise, the excerpt would read "then this lease shall continue in force so long as drilling or re-working operations are being continuously prosecuted on the leased premises. . . ."

The habendum clause also generally describes drilling operations, providing a time limit for "the beginning of operations for drilling of a subsequent well[,]" and further states: "It is agreed that this lease shall remain in force for a term of Five (5) years from this date and as long thereafter as oil or gas of whatsoever nature or kind is produced from said leased premises . . . or drilling operations are continued as

-11-

hereinafter provided." Id. (emphasis added). If the import of the leases was as the Andersons assert, then the habendum clause would provide for "the beginning of drilling of a subsequent well" rather than "the beginning of operations for drilling." The habendum clause would further state that the leases would extend if "drilling is continued as hereinafter provided," instead of providing an extension if "drilling operations are continued as hereinafter provided." These excerpts from the habendum clause provide context, and support our conclusion that the proper interpretation of the phrase "engaged in drilling or reworking operations" includes both "drilling operations" and "reworking operations."[5]

Moreover, as discussed supra Part III, although the North Dakota Supreme Court has not directly interpreted the phrase "drilling or reworking operations," it has cited case law suggesting that the proper interpretation of the phrase includes drilling operations and reworking operations. Other jurisdictions that have interpreted the phrase "drilling or reworking operations" have reached the same conclusion. See Rogers v. Osborn, 261 S.W.2d 311, 313 (Tex. 1953) (in a lease clause stating: "If at the expiration of the primary term oil, gas or other mineral is not being produced on said land but lessee is then engaged in drilling or re-working operations thereon[,]" the word "operations" "undoubtedly means both 'drilling' and 'reworking' operations."); Guleke v. Humble, 126 S.W.2d 38, 41-42 (Tex. App. 1939) (finding that the lessee was "engaged in drilling operations" where a well completion clause provided that the lessee must be "engaged in drilling or re-working operations" to extend the primary term of the lease); see also Manzano Oil Corp. v. Chesapeake Operating, Inc., 178 F. Supp. 2d 1217, 1219-20 (D.N.M. 2001) (same); Lamoco, Inc. v. Hughes, 850 So. 2d 67, 71 (La. Ct. App. 2003) (same); Whelan v. Lacey, 251

---

[5]Reading the habendum clause to give effect to all of its provisions in this way does not contradict the Pugh clause, which provides only that the lessee must be "engaged in drilling or reworking operations." Joint App'x at 7. In other words, the Pugh clause is silent as to the proper meaning of "engaged in drilling or reworking operations," and reading it in conjunction with the habendum clause yields the same result as reading the habendum clause on its own.

-12-

S.W.2d 175, 176-77 (Tex. App. 1952) (same).[6]  Finally, W.L. Summers's leading treatise on oil and gas law sets forth the general principle regarding drilling or reworking operations:

> <u>Various provisions of an oil and gas lease make it necessary to determine what constitutes</u> the beginning or commencement of a well or of <u>drilling or reworking operations</u>. . . .  <u>The general rule is that actual drilling is unnecessary</u>, but the location of well sites, hauling lumber on the premises, erection of derricks, providing a water supply, moving machinery on the premises and similar acts preliminary to the beginning of the process of drilling, when performed with the bona fide intention to proceed with diligence toward the completion of the well, constitute a commencement or beginning of a well or drilling operations within the meaning of the lease.

---

[6]The Andersons rely on <u>Solberg v. Sunburst Oil & Gas Co.</u>, 235 P. 761 (Mont. 1925) to support their construction of the disputed lease language.  <u>Solberg</u>, however, is distinguishable from the present case.  Unlike the cases discussed <u>supra</u>, the court in <u>Solberg</u> did not construe or address the phrase "drilling or reworking operations." Rather, the disputed lease language in <u>Solberg</u> was "will commence drilling operations for oil," 235 P. at 762, and the court construed the phrase "commence drilling operations."  The Montana Supreme Court concluded that the phrase, as properly interpreted, means "the first movement of the drill penetrating the ground." <u>Id.</u> at 763.  Put differently, the <u>Solberg</u> court concluded that "drilling operations" do not begin until the drill penetrates the ground.  The <u>Solberg</u> court's interpretation of "drilling operations," however, is inconsistent with the majority of authorities, which have concluded that "drilling operations" do not require actual drilling.  <u>See, e.g.</u>, <u>Humphrys v. Skelly Oil Co.</u>, 83 F.2d 989, 992 (5th Cir. 1936); <u>Murphy v. Amoco Prod. Co.</u>, 590 F. Supp. 455 (D.N.D. 1984); <u>Haddock v. McClendon</u>, 266 S.W.2d 74 (Ark. 1954); <u>Wilcox v. West</u>, 114 P.2d 39 (Cal. Ct. App. 1941); <u>Oelze v. Key Drilling, Inc.</u>, 481 N.E.2d 801 (Ill. App. Ct. 1985); <u>Johnson v. Yates Petroleum Corp.</u>, 981 P.2d 288 (N.M. Ct. App. 1999); <u>Petersen v. Robinson Oil & Gas Co.</u>, 356 S.W.2d 217 (Tex. App. 1962); <u>Fast v. Whitney</u>, 187 P. 192 (Wyo. 1920); 2 W.L. Summers, Oil & Gas § 15:19 (3d ed. 2008).  Thus, we find the Andersons' reliance on <u>Solberg</u> misplaced.

2 W.L. Summers, <u>Oil and Gas</u> § 15:19 (3d ed. 2008) (emphases added).  Summers's general principle further supports our interpretation of the phrase "engaged in drilling or reworking operations."  Thus, the district court correctly interpreted the disputed lease language and properly granted summary judgment in favor of Hess on the Andersons' quiet title claim.[7]

Accordingly, we affirm.

———————————————

---

[7]The Andersons concede that Hess was engaged in drilling operations before the primary terms expired.  Thus, we need not address whether the preparatory activities in which Hess engaged prior to the expiration of the primary terms constitute drilling operations.