# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2020 ND 172

Hess Bakken Investments II, LLC; Arkoma
Drilling II, L.P.; and Comstock Oil & Gas, LP,  Plaintiffs and Appellants

v.

AgriBank, FCB; Intervention Energy, LLC;
and Riverbend Oil & Gas, VI, L.L.C.,  Defendants and Appellees

### No. 20190352

Appeal from the District Court of Mountrail County, North Central Judicial District, the Honorable Stacy J. Louser, Judge.

REVERSED IN PART AND REMANDED.

Opinion of the Court by Crothers, Justice, in which Chief Justice Jensen, Justice McEvers and District Court Judge Bahr joined. Justice Tufte filed a dissenting opinion.

Paul J. Forster (argued) and Zachary R. Eiken (on brief), Bismarck, ND, for plaintiffs and appellants.

Elizabeth L. Pendlay, Crosby, ND, for defendant and appellee AgriBank, FCB.

Joshua A. Swanson, Fargo, ND, for defendant and appellee Intervention Energy, LLC.

Scott M. Knudsvig (argued) and Matthew H. Olson (on brief), Minot, ND, for defendant and appellee Riverbend Oil & Gas, VI, L.L.C.

**Crothers, Justice.**

[¶1]   Hess Bakken Investments II, LLC; Arkoma Drilling II, L.P.; and Comstock Oil & Gas, LP, (together the "Hess Group") appeal from an order and judgment dismissing their claims against AgriBank, FCB; Intervention Energy, LLC; and Riverbend Oil & Gas VI, L.L.C. (together the "Appellees"). At issue is the meaning of the term "actual drilling operations" as used in continuous drilling clauses in two oil and gas leases.   The district court interpreted the term as requiring "placing the drill bit in the ground and penetrating the soil." Concluding the lease term "actual drilling operations" is ambiguous as a matter of law, we reverse the judgment in part and remand for further proceedings.

I

[¶2]   According to the Hess Group's amended complaint, in 2004 AgriBank leased mineral acres located in Mountrail County to Diamond Resources, Inc., via two separate leases (the "Subject Leases").   The Hess Group acquired a working interest in the Subject Leases.  The acreage was pooled into a spacing unit.  Continental Resources, Inc., is the operator of wells drilled within the unit.  The Hess Group opted to participate in the wells as a non-operating working interest owner.

[¶3]   The Subject Leases were for a primary term of five years, which was extended for three years—to April 2, 2012.  On April 11, 2012, AgriBank executed oil and gas leases with Intervention Energy over the same acreage. Intervention Energy assigned the leases to Riverbend Oil & Gas.  In 2018 the Hess Group sued the Appellees, seeking to quiet title to working interests in the Subject Leases and a declaration that they remain in effect.  The Hess Group also brought claims for breach of contract, unjust enrichment, and accounting.

[¶4]  The Subject Leases, which were attached to the Hess Group's complaint, each contain identical provisions titled "Continuous Drilling Clause," which state:

> "Production in paying quantities on a portion of the leased premises or lands unitized therewith will extend this lease only to such acreage of the leased premises beyond the primary term as may be then included in a producing unit or units, the size and conformity of which have been approved by any duly authorized authority having jurisdiction thereof.  However, *this lease shall not terminate if actual drilling operations on any portion of the leased premises, or on lands with which a portion of the leased premises may be unitized*, (such unit having been approved on size and conformity with any duly authorized authority having jurisdiction thereof) *are being conducted at the end of the primary term*.  Such operations shall continue to maintain this lease in force and effect beyond the primary term for so long as actual drilling operations are being conducted with no cessation of more than one hundred twenty (120) consecutive days from the date of the running of the final induction electrical survey of one well and the actual drilling operations of another well; any well commenced and drilled pursuant hereto after the primary term shall be drilled to a depth sufficient to test the producing horizon in the nearest producing well unless production in paying quantities is encountered at a lesser depth.  If operations taking place at or after the expiration of the primary term are discontinued for longer than one hundred twenty (120) consecutive days, then this lease shall remain in force and effect only as to the leased premises then included within production unit or units."

(Emphasis added.)   The Hess Group alleged Continental conducted preparatory activities in March of 2012 in anticipation of drilling wells.  The Hess Group's complaint states:

> "Actual drilling operations on the Wells began on or before March of 2012.  On information and belief, Continental committed various resources to drilling the Wells by this time.   On information and belief, Continental began construction of a well pad for the Wells on or about March 1, 2012 . . . ."

The Hess Group alleges Continental drilled wells in early May of 2012 that continue to produce oil and gas in paying quantities.

[¶5]   Intervention Energy and RiverBend moved to dismiss for failure to state a claim under N.D.R.Civ.P. 12(b)(6).  The district court granted the motions in part, concluding the Subject Leases expired because "placing the drill bit in the ground and penetrating the soil" did not occur before expiration of the primary term.  The court dismissed the Hess Group's claims for quiet title, declaratory relief, and breach of contract in their totality.  The court partially dismissed the claims for unjust enrichment and accounting.  The parties stipulated to dismissal of the remaining claims, and this appeal followed.

II

[¶6]   We review appeals from N.D.R.Civ.P. 12(b)(6) dismissals de novo and only affirm when we cannot discern a potential for proof to support the claims in the complaint.  *Brandvold v. Lewis & Clark Pub. Sch. Dist. No. 161*, 2011 ND 185, ¶ 6, 803 N.W.2d 827.  "We construe the complaint in the light most favorable to the plaintiff, taking as true the well-pleaded allegations in the complaint."  *Ziegelmann v. DaimlerChrysler Corp.*, 2002 ND 134, ¶ 5, 649 N.W.2d 556.  We also review decisions interpreting oil and gas leases de novo, as a question of law, and we independently construe a lease's provisions.  *Johnson v. Statoil Oil & Gas LP*, 2018 ND 227, ¶ 7, 918 N.W.2d 58.

[¶7]   The parties dispute the meaning of the term "actual drilling operations" as used in the Subject Leases' continuous drilling clauses.  The Hess Group argues good-faith, on-site activities conducted in preparation for drilling are sufficient to extend the Subject Leases.  Because it pled those activities occurred prior to expiration of the primary term, the Hess Group asserts dismissal was improper.  The Appellees argue the continuous drilling clauses require more than preparatory work.  They assert the clauses only extend leases when a rotating drill bit has been placed into the earth.  The Appellees claim the leases expired and dismissal was proper because the Hess Group did not allege drilling into the earth occurred during the primary term.

[¶8] "The same general rules that govern interpretation of a contract apply to oil and gas leases." *Statoil Oil & Gas LP*, 2018 ND 227, ¶ 7, 918 N.W.2d 58.

> "The construction of a written contract to determine its legal effect is a question of law. *Lire, Inc. v. Bob's Pizza Inn Restaurants, Inc.*, 541 N.W.2d 432, 433 (N.D. 1995). Contracts are construed to give effect to the mutual intention of the parties at the time of contracting. N.D.C.C. § 9-07-03; *Lire*, at 433-34. The parties' intention must be ascertained from the writing alone, if possible. N.D.C.C. § 9-07-04; *Lire*, at 434. A contract must be construed as a whole to give effect to each provision if reasonably practicable. N.D.C.C. § 9-07-06; *Lire*, at 434."

*Grynberg v. Dome Petroleum Corp.*, 1999 ND 167, ¶ 10, 599 N.W.2d 261.

[¶9] In *Abell v. GADECO, LLC*, we discussed the term "drilling operations," noting case law "tend[s] to define the phrase . . . to include 'preparation of the drill site.'" 2017 ND 163, ¶ 10, 897 N.W.2d 914. But the lease in *Abell* did not include the word "actual," and it contained a specific definition of the term "operations." *Id.* at ¶ 2. North Dakota's federal district court also has examined the term "drilling operations," albeit also not within the context of the adjective "actual." The court explained:

> "'Drilling operations commence when (1) work is done preparatory to drilling, (2) the driller has the capability to do the actual drilling, and (3) there is a good faith intent to complete the well. It is not necessary that the drill bit actually penetrate the ground.'"

*Anderson v. Hess Corp.*, 733 F. Supp. 2d 1100, 1106 (D.N.D. 2010) (quoting *Murphy v. Amoco Prod. Co.*, 590 F. Supp. 455, 458 (D.N.D. 1984)); *see also Wold v. Zavanna, LLC*, No. 4:12-cv-043, 2013 WL 6858827, at *2-3 (D.N.D. Dec. 31, 2013) (opinion of Miller, Mag. J.).

[¶10] Decisions from other jurisdictions have similar limitations. *See, e.g., Enduro Operating LLC v. Echo Prod., Inc.,* 413 P.3d 866 (N.M. 2018) (interpreting the term "actually commence the proposed operation," which was drilling within the context of a joint operation agreement); *Rippy Interests, LLC v. Nash*, 475 S.W.3d 353 (Tex. Ct. App. 2014) (interpreting the term

"operations," which was defined to specifically include "drilling"); *Peironnet v. Matador Res. Co.*, 144 So.3d 791 (La. 2013) (interpreting a lease that specifically defined "actual drilling operations" to mean drilling into the ground); *Exxon Mobil Corp. v. Ala. Dept. of Conservation and Natural Res.*, 986 So.2d 1093 (Ala. 2007) (interpreting a lease that defined "actual drilling operations" as commenced by spudding in a new well); *Hall v. JFW, Inc.*, 893 P.2d 837 (Kan. Ct. App. 1995) (interpreting the term "commence to drill").

[¶11] A federal administrative decision from the Interior Board of Land Appeals concluded the term "actual drilling operations," as that term is used in federal oil and gas leases, requires "penetration of the ground by a drilling bit." *Estelle Wolf*, 37 IBLA 195, 197 (Oct. 12, 1978). However, that decision was in the context of a federal regulatory provision that defined the term as the physical drilling of a well and activities that take place after drilling. *Id.* at 200-201. The decision was based in part on a review of legislative history, the peculiar nature of federal oil and gas leases, and the principle that the Secretary of the Interior "may interpret the meaning of the words he has placed in his regulations . . . without following cases involving fee land leases." *Id.* at 198.

[¶12] With no clear precedential guidance, we turn to the parties' interpretations. The Hess Group emphasizes the word "operations" asserting it contemplates more than simply placing a rotating drill bit into the earth. The Appellees criticize the Hess Group's interpretation as ignoring the word "actual." The Hess Group responds by explaining its interpretation of the word "actual" refers to a good-faith intent to complete a well and limits the scope of drilling operations to those that are physically undertaken at the well-site, as opposed to off-site activities like mapping a well pad or obtaining a drilling permit. On the other hand, the Hess Group criticizes the Appellees' interpretation as ignoring the word "operations." The Appellees respond by emphasizing the word "actual." They assert the addition of the word "actual" to "drilling operations" requires drilling into the ground.

[¶13] Each side has advanced competing readings of the term based on understandings of English grammar and industry usage. Although at odds,

both interpretations are supported by rational arguments. "A contract is ambiguous when rational arguments can be made for different interpretations." *Nichols v. Goughnour*, 2012 ND 178, ¶ 12, 820 N.W.2d 740. We conclude the term "actual drilling operations" is ambiguous as used in the Subject Leases. When ambiguity exists, the parties' intent becomes a question of fact requiring a factual finding based on extrinsic evidence. *Flaten v. Couture*, 2018 ND 136, ¶ 45, 912 N.W.2d 330. Given this ambiguity, dismissal as a matter of law was improper.

## III

[¶14] We reverse the dismissal order and judgment to the extent they dispose of the non-stipulated claims and remand the case for further proceedings.

[¶15]   Daniel J. Crothers
        Lisa Fair McEvers
        Douglas A. Bahr, D.J.
        Jon J. Jensen, C.J.

[¶16] The Honorable Douglas A. Bahr, D.J., sitting in place of VandeWalle, J., disqualified.

**Tufte, Justice, dissenting.**

[¶17] I respectfully dissent.

[¶18] The majority concludes dismissal was improper because each side supports its offered interpretation with a rational argument. Determination of ambiguity, like assessment of whether an argument is rational, is not a precise, clearly delineated scientific inquiry. Both sides argue there is only one rational interpretation of the term "actual drilling operations." Only in the alternative does the appellant argue that we should find ambiguity in the term and remand. The appellees persuasively parse the structure and grammar of the lease terms, pointing out what I believe are serious flaws in the appellants' construction. I would conclude the term "actual drilling operations"

unambiguously requires more than mere preparatory work and begins only when the drill bit penetrates the ground.

[¶19] In the course of identifying an ambiguity, the majority relies primarily on two cases, both of which I find unpersuasive. Our decision in *Abell v. GADECO, LLC*, is inapposite because it construed a lease defining "operations" broadly to include "building of roads, preparation of the drill site, [and] moving in for drilling." 2017 ND 163, ¶ 2, 897 N.W.2d 914. In *Abell*, the lease provided that it remained in effect so long as "operations are conducted on the leased premises." *Id.* This specific definition to broaden "operations" to include preparatory work sheds little light on what the term "actual drilling operations" means here, where the component words are not defined in the lease. I also find unpersuasive *Anderson v. Hess Corp.*, 733 F. Supp. 2d 1100, 1106 (D.N.D. 2010), which looks to an industry definition of "drilling operations" that includes preparatory work done with a good-faith intent to drill a well to completion. The court's explanation states that it is "not necessary that the drill bit actually penetrate the ground," and quotes a definition that distinguishes the preparatory work from "the actual operation of drilling in the ground." *Id.* Rather than support a conclusion that there is ambiguity here, the *Anderson* court's uses of "actual" are consistent with what the district court here concluded the term "actual" adds to "actual drilling operations": it distinguishes drilling from preparing to drill.

[¶20] I would conclude that actual drilling operations as used in this lease unambiguously requires drilling operations that include actual, bit-in-the-ground drilling as opposed to only operations preparatory to drilling. I would affirm the district court.

[¶21]  Jerod E. Tufte