# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2021 ND 171

| | |
|---|---|
| Continental Resources, Inc., | Plaintiff and Appellee |
| v. | |
| Phillip Armstrong, | Defendant and Appellant |
| and | |
| Citation 2002 Investment Limited Partnership, | Defendant and Appellee |
| and | |
| Paragon Oil & Gas, LLC, Poplar Energy Company, LLC, Grandhaven Energy, LLC, Goldline Creek, LLC, Dakota Ventures I, LLC, and Geo Resource Management, LLC, | Defendants |

## No. 20210060

Appeal from the District Court of Dunn County, Southwest Judicial District, the Honorable William A. Herauf, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND VACATED IN PART.

Opinion of the Court by McEvers, Justice.

Spencer D. Ptacek (argued) and Lawrence Bender (on brief), Bismarck, ND, for plaintiff and appellee.

Phillip D. Armstrong, self-represented, Minot, ND, defendant and appellant.

Joshua A. Swanson, Fargo, ND, for defendant and appellee.

# Continental Resources v. Armstrong
## No. 20210060

**McEvers, Justice.**

[¶1]   Phillip Armstrong appeals from a judgment adjudicating ownership of interests in an oil and gas lease and the parties' claims to revenue proceeds from production on those interests.  We affirm the judgment to the extent it determines ownership of the disputed interests and dismisses Armstrong's claims against Continental Resources, Inc.   We reverse and vacate the judgment to the extent it orders Armstrong to pay Citation 2002 Investment Limited Partnership restitution for unjust enrichment.

I

[¶2]   Continental Resources operates wells located on lands covered by the lease.  When Continental learned of competing claims to the leasehold interests in question, it began holding production royalties in suspense and recouping amounts it had paid on the wells.  Continental sued Armstrong alleging it had overpaid him.   Continental later amended its complaint to add the other defendants and request interpleader relief.  Continental requested the district court determine ownership of the interests and the amount of revenue proceeds to which each defendant is entitled on production from wells the parties refer to as the Hartman Wells.   The defendants filed various crossclaims and counterclaims.

[¶3]   As relevant to this appeal, Armstrong filed claims against Continental alleging underpayment of revenue proceeds from the Hartman Wells and other wells located on lands covered by the lease, which the parties refer to as the Meadowlark Wells, the Skachenko Wells, and the Bice-Dolezal Wells.  Citation 2002 Investment Limited Partnership filed a claim for unjust enrichment against the other defendants alleging they improperly retained proceeds that Citation is entitled to from production on the Hartman Wells.

[¶4]   The oil and gas interests at issue arise from a lease executed by Frank and Marie Skachenko to C.E. Beck in 1972 covering lands in Dunn County. The Skachenkos reserved a 1/8 royalty on production under the lease.

1

Successors to Beck's interest assigned an overriding royalty that was ultimately acquired by the Apache Corporation. Apache conveyed various interests, "together with all overriding royalty interests," to Key Production Company. Apache and Key subsequently filed a correction instrument, which noted "the Original Assignment has been misinterpreted" and provided instructions on how to calculate the interests.

[¶5] At the heart of the dispute is the proper interpretation of the Apache-Key conveyance and correction. Armstrong acquired a portion of Key's interests; Citation acquired Apache's interests. Armstrong claims the correction instrument relieves his working interest in the lease from all burdens. Armstrong also claims Key acquired, and he succeeded to a portion of, the entire overriding royalty based on the "together with all overriding royalty interests" language in the original conveyance. Citation claims Apache acquired the majority of the overriding royalty based on the calculation set out in the correction instrument. Continental does not claim ownership of the disputed interests; it agrees with Citation's stance on title.

[¶6] The district court denied cross-motions for summary judgment finding the language in the conveyances is ambiguous. The court held a bifurcated bench trial. After the first trial, the court entered an order determining the correction instrument vested Apache with 97.82% of the overriding royalty and Key with 2.18%. The court also ordered Continental to provide an accounting of the revenue amounts each defendant was entitled to on production from the Hartman Wells. After the second trial, the court awarded Citation restitution for its unjust enrichment claim against the other defendants and dismissed Armstrong's counterclaims against Continental. On November 4, 2020, the court entered an order for judgment with findings of fact and conclusions of law. Final judgment was entered January 8, 2021.

II

[¶7] On appeal, Armstrong challenges the district court's title determination, the court's dismissal of his claims against Continental for underpayment of revenue proceeds, and the court's award of restitution to Citation for its unjust

2

enrichment claim. Aside from Citation, the other defendants hold interests that are consistent with Armstrong's chain of title. They have not appealed.

[¶8] Our standard of review for appeals from a judgment entered after a bench trial is well established:

> In an appeal from a bench trial, the district court's findings of fact are reviewed under the clearly erroneous standard of review, and its conclusions of law are fully reviewable. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all of the evidence, this Court is convinced a mistake has been made. In a bench trial, the district court is the determiner of credibility issues and we will not second-guess the district court on its credibility determinations. Findings of the trial court are presumptively correct.

*Great Plains Royalty Corp. v. Earl Schwartz Co.*, 2021 ND 62, ¶ 10, 958 N.W.2d 128 (quoting *McCarvel v. Perhus*, 2020 ND 267, ¶ 9, 952 N.W.2d 86).

### III

[¶9] As a threshold matter, Armstrong asserts Citation's claim to the disputed interests is barred by the twenty-year statute of limitations under N.D.C.C. § 28-01-04 for actions to recover or possess real property.

[¶10] Section 28-01-04, N.D.C.C., provides:

> No action for the recovery of real property or for the possession thereof may be maintained, unless the plaintiff, or the plaintiff's ancestor, predecessor, or grantor, was seized or possessed of the premises in question within twenty years before the commencement of such action.

"Generally, a defense based on the statute of limitations in a civil proceeding is an affirmative defense, and the party relying on the statute of limitations has the burden of proving the action is barred." *D.E. v. K.F.*, 2012 ND 253, ¶ 11, 825 N.W.2d 832.

3

[¶11] The district court summarily rejected Armstrong's argument. Our review of the record shows Armstrong asserted N.D.C.C. § 28-01-04 applied in a conclusory fashion unsupported by analysis or relevant authority. "A party must do more than submit bare assertions, and an argument is without merit if the party does not provide supportive reasoning or citations to relevant authorities." *Gaede v. Bertsch*, 2017 ND 69, ¶ 18, 891 N.W.2d 760; *see also Kautzman v. Kautzman*, 2003 ND 140, ¶ 15, 668 N.W.2d 59. We conclude the district court did not err when it rejected Armstrong's argument that N.D.C.C. § 28-01-04 barred Citation's claim.

IV

[¶12] Armstrong claims the district court misinterpreted the correction instrument. He asserts the misinterpretation resulted in an erroneous overriding royalty ownership determination and an incorrect conclusion that his working interest in the lease is burdened by other interests.

[¶13] The general rules that apply to the interpretation of contracts apply to instruments conveying oil and gas interests. *Nichols v. Goughnour*, 2012 ND 178, ¶ 12, 820 N.W.2d 740.

> The construction of a written contract to determine its legal effect is a question of law. *Lire, Inc. v. Bob's Pizza Inn Restaurants, Inc.*, 541 N.W.2d 432, 433 (N.D. 1995). Contracts are construed to give effect to the mutual intention of the parties at the time of contracting. N.D.C.C. § 9-07-03; *Lire*, at 433-34. The parties' intention must be ascertained from the writing alone, if possible. N.D.C.C. § 9-07-04; *Lire*, at 434. A contract must be construed as a whole to give effect to each provision if reasonably practicable. N.D.C.C. § 9-07-06; *Lire*, at 434.

*Hess Bakken Invs. II, LLC v. AgriBank, FCB*, 2020 ND 172, ¶ 8, 946 N.W.2d 746 (quoting *Grynberg v. Dome Petroleum Corp.*, 1999 ND 167, ¶ 10, 599 N.W.2d 261). The district court concluded the language in the correction instrument is ambiguous. That holding has not been challenged on appeal. "When ambiguity exists, the parties' intent becomes a question of fact requiring a factual finding based on extrinsic evidence." *Hess Bakken Invs.*, at ¶ 13.

4

[¶14] The original conveyance from Apache to Key, which was made effective January 1, 1993, and titled "Quitclaim Assignment and Bill of Sale," conveyed:

> The leasehold estates created by the leases, licenses, permits and other agreements described in Exhibit A, INSOFAR BUT ONLY INSOFAR as they cover and relate to the land . . . described in Exhibit A . . . together with *all overriding royalty interests*, production payments and other payments described in Exhibit A out of or measured by the value of oil and gas production[.]

(Emphasis added.) Exhibit A describes tracts of land along with Key's working interest in decimal form.

[¶15] The correction instrument, which is titled "Correction Instrument and Quit Claim Assignment of Additional Interests" was dated August 1, 1995, but made effective January 1, 1993. It states:

> Assignor and Assignee have subsequently determined that the Original Assignment has been misinterpreted and that Exhibits A and B to the Original Agreement contained certain incorrect or misleading information. Assignor and Assignee desire to correct and amend the Original Assignment and to replace Exhibits A and B thereto. Assignor also desires to quitclaim additional interests to Assignee and to quitclaim the remainder to Apache Corporation.

The document identifies Apache as the assignor and Key as the assignee. The following language, appearing in a section titled "Correction Assignment and Bill of Sale," states the parties' correction to the original conveyance as follows:

> **Partial Assignment of Undivided Working Interests in Leases.** An undivided interest equal to the "Key Working Interest" multiplied by the "Lease Net Acres" shown for each of the leases, orders, licenses, permits, or other documents described in Exhibit A attached hereto, INSOFAR AND ONLY INSOFAR as they cover and relate to the land . . . described in Exhibit A . . . *together with a like percentage of all overriding royalty interests*, production payments, and other payments described in Exhibit A out of or measured by the value of oil and gas production. *To calculate the interest in each lease assigned to Assignee, multiply*

> the "Key Working Interest" (decimal number) by the "Lease Net
> Acres" for each lease.

(Emphasis added.)  Exhibit A, attached to the correction instrument, describes tracts of land along with Key's working interest in decimal form; some values are different from those in the attachment to the original conveyance.  None of the parties challenge the district court's holding that the correction instrument "validly amended" the original conveyance.

## A

[¶16] Armstrong claims the correction instrument "caused no change" in the disputed overriding royalty interests.  Armstrong's claim to ownership relies on the "together with all overriding royalty interests" language in the original conveyance.  He claims the correction instrument "ratified and confirmed" the original conveyance and "[t]he percentage of override assigned does not require calculation."

[¶17] The district court rejected Armstrong's proffered interpretation.  It found a Citation title analyst's testimony was persuasive.  The title analyst testified concerning the meaning of the language in the correction instrument:

> Q. [D]oes that language say that whatever working interest that Key or Apache got, their overriding royalty interest should be the exact same?
>
> A. No.
>
> Q. What does it say?
>
> A. It would be a like percentage, being that that one percent in exhibit A times the . . . proportionally reduced override.

The title analyst testified as to her methodology for determining the appropriate amount of "lease net acres" to calculate Key's working interest as required by the correction instrument.

[¶18] The district court considered the title analyst's methodology instructive and held:

Apache and Key intended for Apache to convey to Key a percentage of Apache's then-existing overriding royalty interest in the Skachenko Lease. This percentage must be equal to the percentage of Apache's then-existing working interest in the Skachenko Lease calculated by multiplying the "Key Working Interest" by the "lease Net Acres" for the Skachenko Lease as set forth in Exhibit A to the Correction Instrument.

[¶19] Armstrong claims the district court erred as a matter of law because it misunderstood the nature of working interests and royalty interests. He asserts the court "conflated" the two in its calculations. He argues: "[t]he override isn't measured by Apache's working interest, it's measured by the value of oil and gas produced by the working interest."

[¶20] Armstrong is correct that the revenue generated by an overriding royalty interest is based on production.

> An overriding royalty interest is an interest in oil and gas production that is carved out of the working interest created in an oil and gas lease. The working interest in an oil and gas lease gives its owner the right to export minerals from the land; it is an interest that is burdened by the costs of production. An overriding royalty interest is an interest in oil and gas that has been produced, and it is free of the costs of production.

*El Petron Enters., LLC v. Whiting Res. Corp.*, No. 1:16-cv-090, 2018 WL 1322391, at *3 (D.N.D. Mar. 14, 2018).

[¶21] However, the district court did not include the working interests in its overriding royalty calculation based on a misunderstanding of the nature of mineral interests. Rather, under the court's interpretation of the correction instrument, inclusion of the working interests in the calculation is necessary to arrive at an overriding royalty that is in "like percentage" to the working interest conveyed. The court's interpretation is supported by the language in the instrument and testimony concerning the parties' intent. We conclude the court's finding concerning the parties' overriding royalty ownership is not clearly erroneous.

7

B

[¶22] Armstrong argues the district court erred when it determined his working interest in the lease was burdened by the 1/8 production royalty originally reserved by the Skachenkos as well as the overriding royalty interest discussed above. Armstrong asserts the parties to the correction instrument intended for Key's working interest to be unburdened by prior reservations and assignments in the chain of title. He argues:

> The parties saw fit to assign working interests to Key in a way to be paid without burdens. Their purpose was accomplished with the language of the Correction Instrument wherein working interests and overrides were conveyed in like percentage. Again, to be in like percentage with [the] override, working interests aren't to be paid burdened.

[¶23] Armstrong's argument is unpersuasive. He reads the language in the correction instrument as describing how revenues are "to be paid." He confuses a net revenue interest with ownership interests. A net revenue interest is "a share of the working interest" and is subject to satisfaction "of all royalty, overriding royalty, oil payments, or other nonoperating interests." *Minex Res., Inc. v. Morland*, 467 N.W.2d 691, 695 n.2 (N.D. 1991) (quoting 8 H. Williams and C. Meyers, *Oil and Gas Law Manual of Oil and Gas Terms*, at pp. 601-602 (1987)). The district court found Armstrong had not identified anything in his chain of title to support his assertion that he should not bear the burdens his predecessors carved from their interests. The court's finding is supported by the evidence. We conclude the district court's finding concerning Armstrong's working interest ownership is not clearly erroneous.

V

[¶24] Armstrong argues the district court erred when it dismissed his counterclaims against Continental for underpayment of revenue proceeds. His claims against Continental are premised on various causes of action, including conversion and breach of contract. As to proceeds from the Hartman Wells, he argues dismissal was improper based on his interpretation of title. Because

8

we have upheld the district court's rejection of his title arguments, we conclude the district court did not err.

[¶25] As to the other wells, Armstrong claims the district court's findings of fact and conclusions of law do not support dismissal. He asserts the court's analysis "dealt only with [the] Hartman override, but the judgment dismissed claims for underpayment on all the overrides plus working interests on all of Armstrong's well properties." However, when asked about the basis for his claims concerning the other wells, Armstrong testified:

> A. My position—well, that's a hard question to answer. My position is that I was underpaid according to record title and according to the division orders for the Bice and Dolezal.
> So far as Skachenko and Meadowlark, my position is that I was underpaid according to the terms of the correction instrument.
>
> Q. The terms of the instrument as interpreted by this Court?
>
> A. No. My reading and my understanding of the correction instrument.

Aside from his arguments concerning title, which we have rejected, Armstrong has not offered any other theories for why the payments he received are inadequate or provided any evidence to support an alternative recovery theory. We conclude the court did not err when it dismissed Armstrong's claims against Continental.

## VI

[¶26] Armstrong argues Citation failed to prove it is entitled to equitable relief for unjust enrichment because it has a remedy at law against Continental.

[¶27] Unjust enrichment is an equitable doctrine based upon a contract implied by law to prevent someone from being unjustly enriched at the expense of another:

> Unjust enrichment requires: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) an absence of justification for the enrichment

9

and impoverishment; and (5) an absence of remedy provided by law.

*Ritter, Laber & Assocs., Inc. v. Koch Oil, Inc.*, 2004 ND 117, ¶ 26, 680 N.W.2d 634. "For a complainant to recover, it is sufficient if another 'has, without justification, obtained a benefit at the direct expense of the [complainant], who then has no legal means of retrieving it.'" *Apache Corp. v. MDU Res. Grp., Inc.*, 1999 ND 247, ¶ 14, 603 N.W.2d 891 (quoting *Midland Diesel Svc. & Engine Co. v. Sivertson*, 307 N.W.2d 555, 557 (N.D. 1981)). A determination of unjust enrichment holds that "a certain state of facts is contrary to equity," which is a conclusion of law that is fully reviewable on appeal. *Twete v. Mullin*, 2019 ND 184, ¶ 35, 931 N.W.2d 198.

[¶28] Armstrong argued below, and he maintains on appeal, that Citation has a legal remedy against Continental. He asserts Citation can bring a breach of contract action against Continental for underpayments that were inconsistent with a division order Citation signed. Or Citation can sue Continental to recover amounts that were paid according to revised and unsigned division orders. Armstrong argues Citation is not entitled to the equitable remedy of unjust enrichment because Citation has a legal means of recovering the proceeds it is due.

[¶29] The district court rejected Armstrong's argument and, relying on *Golden v. SM Energy Co.*, 2013 ND 17, 826 N.W.2d 610, held Citation has no remedy at law:

> [I]n a situation where a royalty owner is overpaid at the expense of another royalty owner, the underpaid royalty owner's remedy is recovery of overpaid amounts from the overpaid royalty owner under a theory of unjust enrichment. The North Dakota Supreme Court has not previously recognized a remedy at law available to an underpaid royalty owner against an overpaid royalty owner, and the Court concludes that one likewise does not exist in this case.

[¶30] We conclude the district court misapplied the law. In *Golden*, we upheld a district court's decision that an underpaid interest owner could recover from

10

an operator despite the fact that the operator made the underpayments according to a binding division order. 2013 ND 17, ¶¶ 25-26. The operator in that case was also the overpaid party. *Id.* at ¶ 25. We explained that under those circumstances the operator was "unjustly enriched by retaining the benefits of the erroneous division order and receiving the payments to which Golden was entitled." *Id.* at ¶ 25. We held the district court correctly ruled as a matter of law that the operator owed the underpaid party retroactive royalty payments. *Id.* at ¶ 26. We did not hold an underpaid royalty owner always has an unjust enrichment claim against overpaid royalty owners.

[¶31] We addressed the question of whether a royalty owner can seek legal recourse against an operator for underpayment of royalty proceeds in a line of cases beginning with *Acoma Oil Corp. v. Wilson*, 471 N.W.2d 476 (N.D. 1991). We have explained the answer depends on whether the underpayments were made in accordance with a binding division order. *Maragos v. Newfield Prod. Co.*, 2017 ND 191, ¶ 9, 900 N.W.2d 44. A division order is an instrument executed by an operator and royalty owners directing purchasers to pay for production in the proportions set out in the instrument. N.D.C.C. § 47-16-39.3.

[¶32] In *Acoma*, two royalty owners claimed an operator underpaid them. 471 N.W.2d at 484. One had executed a division order; the other had not. *Id.* We explained the different status of the royalty owners "vis-à-vis executed division orders requires a different analysis of the ultimate responsibility for their claims." *Id.*

> We held that the party who executed a division order with the oil company should not be able to recover from the oil company because the oil company had detrimentally relied upon the order and it would subject them to double liability. [*Acoma*,] at 484-85. As to the party who had not executed a division order, we found the oil company's reliance on the title opinion could not absolve it of all liability as to the underpayments and that party could recover the underpayments from the oil company. *Id.* at 486.

*Maragos,* 2017 ND 191, ¶ 9.

11

[¶33] Our rule is that when an operator has relied to its detriment on a division order signed by an underpaid royalty owner, the underpaid owner is estopped from recovering the underpayments from the operator and must seek recovery from the overpaid royalty owners. *Acoma*, 471 N.W.2d at 485-86. "The basis for the recovery is unjust enrichment; the overpaid royalty owner is not entitled to the royalties." *Id.* at 486 (quoting *Gavenda v. Strata Energy, Inc.*, 705 S.W.2d 690, 692 (Tex. 1986)). However, when an operator has not "detrimentally relied" on a division order, there is no basis for estopping an underpaid party's attempt to recover from the operator. *Maragos*, 2017 ND 191, ¶ 9. Thus, when the underpayments are not made according to a signed division order, the underpaid party "can seek payments from the oil company." *Id.* at ¶ 10.

[¶34] In the present case, the district court received a division order into evidence that was signed by a Citation representative and stated Citation held interests in the disputed property. Although Continental initially made payments to Citation, Citation's director of operations accounting testified Continental recouped all of the payments it made:

> Q.   . . . Did Continental recoup the entirety of the interest paid to Citation for the overriding royalty interests in the Hartman wells that is in dispute?
>
> A.   To my knowledge, they have taken the full recoupment of all monies paid to Citation.
>
> Q.   Okay. And that knowledge is based on your review of the monthly statements that Continental provided to Citation?
>
> A.   Correct.
>
> Q.   Okay. After Continental has taken these recoupments back, taken the money back from Citation, has Continental ever paid Citation for the overriding royalty interests that are in dispute for the Hartman wells?
>
> A.   Not to my knowledge.

12

[¶35] The undisputed evidence, proffered by Citation, is that Continental recouped all of the payments it made to Citation. In Citation's words, it has "never been paid" for its interests and "Armstrong and the [other defendants] were instead paid for Citation's interest." This is not a situation where an operator will be subject to double liability because it relied to its detriment on a binding division order. The estoppel rule expressed in *Acoma* and our subsequent cases does not apply. Citation has a remedy at law; it may seek recovery from Continental. Citation therefore has not met its burden of proving it is entitled to restitution for unjust enrichment. We conclude the district court erred when it ordered Armstrong to pay Citation restitution for revenues Continental owed Citation but never paid.

## VII

[¶36] We have considered the remaining issues and arguments raised by the parties and conclude they are either unnecessary to our decision or are without merit.

## VIII

[¶37] We affirm the judgment to the extent it adjudicates ownership of the disputed interests and dismisses Armstrong's claims against Continental. We reverse and vacate the judgment to the extent it orders Armstrong to pay Citation 2002 Investment Limited Partnership restitution for unjust enrichment.

[¶38] Jon J. Jensen, C.J.
    Daniel J. Crothers
    Lisa Fair McEvers
    Jerod E. Tufte
    Carol Ronning Kapsner, S.J.

[¶39] The Honorable Carol Ronning Kapsner, S.J., sitting in place of VandeWalle, J., disqualified.