# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

### 2026 ND 54

Neil Galpin,                                                 **Plaintiff and Appellee**

    v.

Cantina Holdings, LLC,
and Clay Butte Holdings, LLC,                 **Defendants and Appellants**

### No. 20250254

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Lindsey R. Nieuwsma, Judge.

AFFIRMED.

Opinion of the Court by Tufte, Justice.

Morgan E. Butland Wentz (argued) and David J. Smith (on brief), Bismarck, N.D., for plaintiff and appellee.

Isabelle M. Sanstead-Eastin (argued) and Jonathan P. Sanstead (appeared), Bismarck, N.D., for defendants and appellants.

**Tufte, Justice.**

[¶1]   Cantina Holdings, LLC and Clay Butte Holdings, LLC appeal from a judgment awarding Neil Galpin a $100,000 earnest money deposit held in escrow under a purchase agreement for a business sale that failed to close. The appellants argue that the district court erred in determining which contractual provision governed the disposition of the earnest money when the parties executed multiple agreements containing conflicting terms. The appellants also argue that the district court erred in finding that Galpin did not breach the contract by failing to negotiate the terms of a contract for deed in good faith. We conclude that the district court did not err in interpreting the agreements and did not clearly err by finding that Galpin did not fail to negotiate in good faith. We affirm.

I

[¶2]   Galpin Entertainment, LLC owned and operated The Pier Bar & Grill, a bar and restaurant located in Bismarck, North Dakota. Neil Galpin and Tiffany Galpin were the co-owners of Galpin Entertainment, which listed The Pier for sale for a purchase price of $4,500,000.

[¶3]   Cantina delivered a confidential offer letter to Galpin Entertainment to purchase The Pier, which Galpin Entertainment accepted. In the letter, Cantina agreed to purchase The Pier for $4,000,000, with $500,000 to be paid at closing and the principal balance of $3,500,000 to be paid under a contract for deed.

[¶4]   The confidential letter required Cantina to provide an earnest money deposit of $100,000, which was deposited with Bismarck Title Company. Regarding the deposit, the letter stated:

> The earnest money shall become non-refundable upon the Buyer's satisfaction of its due diligence investigation or March 30, 2023, whichever shall first occur. If Buyer informs seller prior to March 30, 2023 that it does not wish to proceed with the purchase, all earnest

1

money shall be returned to Buyer with neither party having any further obligation to the other.

Cantina assigned its interest in the agreement to Clay Butte. Neither Cantina nor Clay Butte notified Galpin Entertainment that it wished to terminate the transaction prior to March 30, 2023.

[¶5]   On April 4, 2023, Galpin Entertainment and Clay Butte executed a purchase agreement for the sale of The Pier. A real estate broker acting on behalf of Clay Butte prepared the purchase agreement from a standard form drafted by the Bismarck-Mandan Board of Realtors. Among other terms, the purchase agreement incorporated the confidential letter in full and extended the due diligence period to April 20, 2023.

[¶6]   The purchase agreement included a provision governing the disposition of the earnest money. It stated that financing shall be by contract for deed and that "[i]f financing fails after the contingency completion date, earnest money shall be released … to Buyer." These provisions were not specially drafted by the parties but consisted of pre-printed, standard form language and checkboxes.

[¶7]   Clay Butte did not notify Galpin Entertainment that it wished to terminate the transaction before the extended April 20, 2023 due diligence deadline. The parties continued negotiating toward closing, including drafting a contract for deed. In April or May 2023, Clay Butte prepared a draft contract for deed and provided it to Galpin Entertainment for review. In response, Galpin Entertainment requested several changes, including the requirement of personal guarantees from Clay Butte's owners. Clay Butte prepared a second draft contract for deed that incorporated many of Galpin Entertainment's other requested changes, but that did not include personal guarantees. The parties continued to communicate regarding the terms of the contract for deed, including alternatives to personal guarantees.

[¶8]   After the request for personal guarantees, Clay Butte requested an extension of the closing date. Galpin Entertainment agreed, and on May 31, 2023, the parties executed an extension agreement extending the closing date to June 30, 2023. Despite continued negotiations, the parties never signed the contract

2

for deed and the closing date passed. Galpin Entertainment ultimately sold The Pier to another purchaser in mid-July 2023.

[¶9] Galpin Entertainment assigned to Neil Galpin all rights, title, and interest in claims arising from the failed sale. Neil Galpin brought this action seeking a declaratory judgment that he was entitled to the earnest money. The appellants counterclaimed for the same declaratory judgment in their favor, breach of contract, unjust enrichment, and conversion. Following a one-day bench trial, the district court entered a judgment holding that Neil Galpin was entitled to the non-refundable $100,000 earnest money deposit and denying the appellants' counterclaims.

## II

[¶10] Cantina and Clay Butte argue that the district court erred in determining that Galpin Entertainment was entitled to the earnest money under the agreements. They contend that the purchase agreement created a financing contingency that served as a condition precedent to the obligation to close, and that the standard form provisions of the purchase agreement control over the incorporated confidential letter. Relying on *Metcalf v. Security Int'l Ins. Co.*, 261 N.W.2d 795, 800 (N.D. 1977), the appellants argue that the later-in-time purchase agreement should control and that they are entitled to the earnest money under its financing contingency clause.

[¶11] The interpretation of a written contract to determine its legal effect is a question of law, fully reviewable on appeal. *Metcalf*, 261 N.W.2d at 799. "If the intent of the parties can be ascertained from the agreement alone, interpretation of the contract is a question of law." *Spagnolia v. Monasky*, 2003 ND 65, ¶ 10, 660 N.W.2d 223 (citation omitted).

[¶12] The object of interpreting a contract is to ascertain and give effect to the parties' mutual intention at the time of contracting. N.D.C.C. § 9-07-03. The parties' intention in a written contract must be ascertained from the writing alone, if possible. N.D.C.C. § 9-07-04. A contract must be construed as a whole to give effect to each provision, if reasonably possible. N.D.C.C. § 9-07-06. Several contracts relating to the same matters between the same parties and

3

made as parts of substantially one transaction are to be taken together. N.D.C.C. § 9-07-07; *RTS Shearing, LLC v. BNI Coal, Ltd.*, 2021 ND 170, ¶ 13, 965 N.W.2d 40.

[¶13] The confidential letter and the purchase agreement contain conflicting provisions governing the disposition of the earnest money. The confidential letter provides that the earnest money "shall become non-refundable upon the Buyer's satisfaction of its due diligence investigation or March 30, 2023, whichever shall first occur." The purchase agreement contains pre-printed checkbox language stating that if financing fails after the contingency completion date, the earnest money shall be released to the buyer. These provisions conflict as to whether the earnest money was refundable after the due diligence period expired.

[¶14] When a contract is uncertain, "the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." N.D.C.C. § 9-07-19; *City of Bismarck v. Mariner Constr., Inc.*, 2006 ND 108, ¶ 11, 714 N.W.2d 484. Here, the appellants caused the uncertainty in the disposition of the earnest money. The appellants' representative drafted the confidential letter containing the non-refundable earnest money provision. Then they introduced a standard form purchase agreement—also prepared on their behalf—containing conflicting language regarding the earnest money. Having drafted the contracts with conflicting provisions, the appellants cannot now benefit from the uncertainty they caused. The district court did not err in construing the uncertainty against the appellants. N.D.C.C. § 9-07-19.

[¶15] Additionally, when part of a contract is drafted under the special directions of the parties and the remainder is copied from a standard form, the specially drafted part controls over the standard form language, and if the two are absolutely repugnant, the form language must be disregarded. N.D.C.C. § 9-07-16. "[I]f there is a conflict between two provisions in an instrument, the parts which are purely original control those which are copied from a form." *Olson v. Peterson*, 288 N.W.2d 294, 298 (N.D. 1980) (citing N.D.C.C. § 9-07-16). The confidential letter was not a form; its terms were specially drafted by appellants' representative. The conflicting financing contingency provision in the purchase agreement consisted of standard form language and checkboxes that were not specially drafted. The district court did not err in determining that the specially

drafted provision of the confidential letter controls over the form language of the purchase agreement when the former was fully incorporated in the latter.

[¶16] The appellants' reliance on *Metcalf* for the proposition that the later-in-time purchase agreement controls is misplaced. In *Metcalf*, we held that when a later contract deals with the same subject matter and the same parties as earlier contracts, they must be interpreted together, and provisions in a later contract that are inconsistent with the earlier contracts supersede earlier provisions. *Metcalf*, 261 N.W.2d at 800. Here, the purchase agreement expressly incorporated the confidential letter, stating that the confidential letter "is hereby made part of the purchase agreement." Because the confidential letter was incorporated into the purchase agreement, there is no temporal distinction between the two; the later-in-time principle does not apply where the earlier agreement is expressly incorporated into the later one.

## III

[¶17] The appellants also argue that the district court clearly erred in finding that Galpin did not fail to negotiate the terms of the contract for deed in good faith. Specifically, the appellants contend that Galpin Entertainment's late-stage request for personal guarantees demonstrated a lack of sincere desire to reach an agreement. Citing *Belfield Educ. Ass'n v. Belfield Pub. Sch. Dist.*, 496 N.W.2d 12, 16 (N.D. 1993), they argue that Galpin's request for personal guarantees only nine days before the scheduled closing demonstrated a failure to negotiate in good faith. Galpin counters that the request was not fatal to the negotiations and therefore the district court did not clearly err.

[¶18] This Court reviews findings of fact in a bench trial under the clearly erroneous standard of review. *Continental Resources, Inc. v. Armstrong*, 2021 ND 171, ¶ 8, 965 N.W.2d 57. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all of the evidence, this Court is convinced a mistake has been made." *Id*.

[¶19] The appellants cite *Belfield* for the proposition that in assessing good faith, courts do not focus on isolated actions but look to the overall conduct of a party

to determine whether it has engaged in the bargaining process with an open mind and a sincere desire to reach an agreement. *Belfield*, 496 N.W.2d at 16. Applying that rule here, the record supports the district court's finding.

[¶20] The district court found that, from its review of the draft agreements, the parties were "quite close to agreement on the terms of the contract for deed." After Galpin Entertainment's representative initially suggested personal guarantees, the parties continued to communicate regarding the terms of the contract for deed, including alternatives to personal guarantees. The court also relied on testimony from Clay Butte's representative that the appellants requested an extension of the closing date after Galpin Entertainment's request for personal guarantees to allow additional time to complete the sale—and that Galpin Entertainment agreed to extend the closing deadline. The court found that several of the appellants' pre-trial "factual allegations were either unsupported or wholly contradicted by the testimony presented at trial, which negatively impacted the credibility of the [appellants'] evidence and arguments overall." In a bench trial, the district court determines credibility issues, and we will not second-guess those determinations. *Continental Resources*, 2021 ND 171, ¶ 8. The district court did not clearly err in finding that Galpin did not fail to negotiate the terms of the contract for deed in good faith. Viewing the overall conduct of Galpin Entertainment, there was evidence to support the district court's finding that the request was not fatal to continued negotiations. The finding was not clearly erroneous.

IV

[¶21] The district court did not err in interpreting the parties' agreements. The court did not clearly err by finding that Galpin did not fail to negotiate in good faith. We affirm the judgment.

[¶22] Lisa Fair McEvers, C.J.
Daniel J. Crothers
Jerod E. Tufte
Jon J. Jensen
Douglas A. Bahr